The PEOPLE of the State of Colorado, Complainant,

v.

Lyle Otis ROBERTSON, Attorney–Respondent.

Nos. 94SA197, 95SA128 and 95SA236.

Supreme Court of Colorado, En Banc.

Dec. 4, 1995.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Assistant Disciplinary Counsel, Denver, for Complainant.

No Appearance by Attorney–Respondent.

## PER CURIAM.

Three separate lawyer disciplinary proceedings have been consolidated for one opinion and order. For the reasons below, we order that the respondent be disbarred and that any application for readmission be conditioned on the satisfaction of certain conditions, including restitution.

### I

The respondent was admitted to the Colorado bar in 1981. He is now before us involving three separate matters, cases nos. 94SA197, 95SA128, and 95SA236, which were consolidated by order of this court. On April 26, 1994, we immediately suspended respondent from the practice of law.

### A

In No. 94SA197, the hearing board entered a default against the respondent as a sanction for failing to appear at his deposition and failing to comply with the board's discovery orders. C.R.C.P. 37(b)(2), (d); 241.13(b); *People v. Proffitt*, 854 P.2d 787, 787 (Colo. 1993). The factual allegations in the complaint were therefore deemed admitted. *Id.* The respondent did not attend the hearing.

Based on the respondent's default, and evidence tendered by the disciplinary counsel, the hearing board found that the respondent was retained on January 24, 1992, by Carolyn Boynton, the client, to pursue a wrongful death action. Client's child was killed as the result of an automobile accident. The client had been informed that the driv-

er's insurance company would not dispute liability or damages and would tender the policy limits of $15,000. The respondent told his client that she might be entitled to more, and she signed a one-third contingency fee contract for the respondent's services in connection with the "wrongful death of son and investigation into circumstances of death and medical treatment."

By check dated February 24, 1992, the insurance company paid the respondent and his client the policy limits of $15,000. The respondent kept $5,000 and disbursed $10,000 to his client.

█ The respondent therefore collected a $5,000 contingency fee when there was effectively no risk of nonrecovery and little work was performed on the client's behalf. The hearing board found, and we agree, that the respondent's conduct violated DR 2-106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee). *People v. Walker*, 832 P.2d 935, 936 (Colo.1992) (lawyer's fee was excessive in violation of DR 2-106(A) where compensation claimed bore no rational relationship to the work performed); *People v. Nutt*, 696 P.2d 242, 248 (Colo.1985) (where attorney fee, whether characterized as fixed or contingent, was not indicative of time, labor and skill invested, it was prohibited as excessive under DR 2-106).

### B

The respondent defaulted in No. 95SA128, and did not appear at the hearing. The hearing board found that the following had been proven by clear and convincing evidence.

#### 1

The respondent visited a woman and her son, a juvenile, at the hospital where the juvenile was being treated for wounds inflicted by a store owner during a shoplifting incident on or about July 18, 1991. The respondent provided unsolicited legal advice contrary to DR 2-104(A) to the juvenile and his mother (neither of whom were close friends of respondent, relatives or former clients). Respondent advised them to take

legal action against the store owner, and then suggested that he could represent them. They entered into a contingency fee agreement and the mother paid the respondent $500 for costs. The mother subsequently terminated the respondent's services in 1993 and asked for an accounting and a refund of her deposit.

The respondent did not provide either an accounting or a refund, in violation of R.P.C. 1.15(b),[1] and the former client filed a request for investigation on October 5, 1993. The respondent then offered to refund the majority of client's deposit if she would sign a letter stating that she did not want to file a grievance. The client agreed to the request and respondent refunded most of her deposit. This conduct violated R.P.C. 8.4(d) (conduct that is prejudicial to the administration of justice). The respondent also engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, R.P.C. 8.4(c), when he told his client that the filing fee for a complaint was $200.

### 2

In a post-dissolution matter in 1993, the respondent failed to adequately communicate with his client, tried to withdraw from representation without protecting the client's interests, and misrepresented to the court that he did not know his client's current address, did not represent her in any way, and had no way to contact her. This conduct violated R.P.C. 1.4(a) (fail to communicate with client); R.P.C. 1.16(d) (upon termination of representation, a lawyer shall take reasonable steps to protect a client's interests); and R.P.C. 8.4(c) (dishonesty, fraud, deceit or misrepresentation).

### 3

The respondent represented a juvenile injured in an automobile accident. The respondent and the juvenile's mother signed a doctor's lien which directed that Dr. Michael E. Jackson, the treating physician, would be paid from any settlement or recovery as a result of the accident. Although the case was settled and the proceeds received in August 1992, the respondent did not pay any of the $4,993 owed to Dr. Jackson, nor did he institute an arbitration proceeding against the PIP carrier for payment of Dr. Jackson's fee. The respondent's conduct thereby violated DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law); and DR 6–101(A)(2) (a lawyer shall not handle a legal matter entrusted to the lawyer without adequate preparation under the circumstances).

### 4

The respondent represented Ricky Lynn Butler, a/k/a Albert Fuggins in various criminal proceedings. Pursuant to a plea agreement, Butler was sentenced on July 23, 1993. The respondent agreed to file a Crim.P. 35(c) motion for postconviction relief, but did not file the motion.

Following sentencing, the district attorney's office released $7,000.00, which had been seized from Butler's safety deposit box, to the respondent. The respondent did not transfer the funds to either Butler or Patricia Shaver, a co-owner of the funds. He initially misrepresented to Shaver that Butler had instructed the respondent to invest the money, and then told her that he had invested the funds with a friend and would obtain them the following week. The respondent had in fact converted the funds to his own use.

After several unsuccessful attempts to get the funds back, an action was filed against the respondent on October 5, 1993, for return of the money. In his answer to the complaint, the respondent falsely stated that the funds were applied to Butler's outstanding attorney fees. The respondent's fees were actually paid in advance. The respondent's conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to keep client reasonably informed); R.P.C. 1.15(b) (failure to deliver client funds upon request and to provide an accounting); R.P.C. 3.3(a)(1) (make a false statement of material fact or law to a tribunal); R.P.C. 4.1(a) (make a false

---

1. The effective date of the Rules of Professional Conduct was January 1, 1993. For conduct occurring before January 1, 1993, the Code of Professional Responsibility applied.

or misleading statement of fact or law to a third person); and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

During 1992 and 1993, the respondent borrowed $10,000 from Butler. The respondent failed to properly disclose the possibility of a conflict of interest and to advise Butler to seek independent legal advice on the loans. Respondent secured the two loans with a promissory note and lien which were essentially worthless. The respondent thereby violated DR 1–102(A)(4) and R.P.C. 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 5–104(A) (entering into a business transaction with a client having differing interests without full disclosure); R.P.C. 1.7(b) (representing a client if the representation of that client may be materially limited by the lawyer's own interests); and R.P.C. 1.8(a) (entering into a prohibited business transaction with a client).

The respondent sold twelve acres of real property to Butler in December 1992 for $6,000. The respondent misrepresented the extent of his ownership of the real property, and he forged his wife's name on the quit claim deeds and falsely notarized the deeds using his wife's notary seal. His conduct violated DR 1–102(A)(4) (dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law); and C.R.C.P. 241.6(5) (violation of the criminal laws of a state or of the United States).

### 5

The respondent represented a client in a personal injury action to recover damages. The client received treatment at Heuser Chiropractic, a clinic where she had accrued $1,489.50 in charges. Client signed a lien statement agreeing to pay the clinic's charges from any settlement proceeds. The respondent was aware that his client signed the lien statement. Following settlement of the personal injury action, however, the respondent failed to pay the full amount owed to the clinic after he received the funds in trust, and has not paid the balance due in the amount of $739.50. The foregoing conduct violated R.P.C. 1.3 (neglect of a legal mat-

ter); R.P.C. 1.15(b) (failure to deliver to a third party funds that person is entitled to receive); and R.P.C. 8.4(c) (dishonesty, fraud, deceit, or misrepresentation).

### 6

The respondent represented Charles and Lola Downs and Sue Smith in relation to Lester Downs's estate. Smith had been Lester Downs's caretaker. When the respondent represented the Downses and Smith, they had differing interests. He neglected to file Smith's claim against the estate and petition for allowance after the claim was disallowed, misrepresented to Smith that the claim had been timely filed, misrepresented to Lola Downs that he had filed an answer in a civil action when he had not, failed to advise any of the clients that he had decided not to continue with their representation, and failed to return any unused retainer to the Downses. A default judgment was entered against the Downses in the amount of $10,-000. The Downses had paid the respondent a retainer totalling $1,924 as of December 1, 1993. In addition, they have paid $2,800 to another lawyer appealing the default judgment.

The respondent's conduct violated R.P.C. 1.3 (neglect); R.P.C. 1.7(a) (representing client with an interest directly adverse to another client); R.P.C. 1.7(b) (representing multiple clients); R.P.C. 1.15(b) (failing to deliver client funds); R.P.C. 1.16(d) (failing to take reasonable steps to protect clients' interests upon termination of representation); and R.P.C. 8.4(c) (dishonesty, fraud, deceit, or misrepresentation).

### 7

On December 14, 1993, Robert J. Voitl paid the respondent a $400 retainer to represent him in connection with a dissolution of marriage matter. On January 15, 1994, however, Voitl received a letter from another lawyer stating that the respondent had transferred the file to him because the respondent had discontinued the practice of law. The $400 retainer was not transferred with the file and has not been returned. The above conduct violated R.P.C. 1.3, 1.15(b), and 8.4(c).

## C

The respondent also defaulted in No. 95SA236. He represented a couple in relation to an automobile-pedestrian accident in which one of his clients was injured. The automobile driver's insurance company issued a $25,000 settlement check to the respondent on February 8, 1994. The respondent endorsed the check and forged his clients' signatures on the check. He cashed the check on February 11, 1994. On March 21, 1994, the respondent gave his clients a cashier's check in the amount of $7,000 as part of the settlement, but has not paid anything more to them. The clients did receive the remaining $18,000 from Norwest Bank, the bank that had cashed the settlement check.

The respondent engaged in criminal conduct by forging his clients' signatures on a negotiable instrument, § 18–5–102(1)(c), 8B C.R.S. (1995 Supp.) (forgery of a check is a class 5 felony), and he converted client funds; thereby violating R.P.C. 8.4(b) (commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); R.P.C. 8.4(c) (dishonesty); and C.R.C.P. 241.6(5) (violation of the criminal laws of a state or of the United States).

## II

The hearing panel in No. 94SA197 approved the hearing board's recommendation that the respondent be suspended for six months, be required to petition for reinstatement, and pay restitution. The hearing panel in No. 95SA128 approved the board's recommendation that the respondent be disbarred, and that he comply with certain conditions including restitution to be readmitted. Finally, in No. 95SA236, the hearing panel recommended that the respondent be disbarred and pay additional restitution. The respondent defaulted in all three proceedings and no mitigating circumstances were found.

■ The respondent in this case has committed several types of misconduct which alone could result in disbarment. He has converted client funds, abandoned clients, made misrepresentations to his clients, and engaged in criminal conduct by forging deeds

and a settlement check. *See People v. Lefly*, 902 P.2d 361, 364 (Colo.1995) (lawyer's knowing conversion of client funds almost always warrants disbarment even if funds are eventually replaced); *People v. Tucker*, 904 P.2d 1321, 1325–26 (Colo.1995) (lawyer disbarred for abandoning clients); *People v. Marmon*, 903 P.2d 651 (Colo.1995) (lawyer disbarred for falsifying and forging three court documents). We therefore accept the recommendations of the hearing panel in Nos. 95SA128 and 95SA236, and order that the respondent be disbarred.

## III

It is hereby ordered that Lyle Otis Robertson be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the release of this opinion. It is further ordered that, prior to any application for readmission, the respondent demonstrate that he has made the following restitution:

(1) $3,600 plus statutory interest from February 27, 1992, to Carolyn Boynton;

(2) $4,993 plus statutory interest from August 31, 1992, to Michael E. Jackson;

(3) $7,000 plus statutory interest from August 31, 1993, to Patricia Shaver and Ricky Lynn Butler;

(4) $5,000 plus statutory interest from October 29, 1992, to Ricky Lynn Butler;

(5) $5,000 plus statutory interest from April 12, 1993, to Ricky Lynn Butler;

(6) $6,000 plus statutory interest from December 31, 1992, to Ricky Lynn Butler;

(7) $739.50 plus statutory interest from July 31, 1993, to Heuser Chiropractic Clinic;

(8) $14,724 plus statutory interest from December 31, 1993, to Charles and Lola Downs;

(9) $400 plus statutory interest from December 14, 1993, to Robert J. Voitl;

(10) $18,000 plus statutory interest from June 28, 1994, to Norwest Bank or its successor entity.

It is further ordered that, should he seek readmission, the respondent must demon-

strate the ability to practice law with competence and in accordance with the rules of professional conduct. It is further ordered that the respondent pay the combined costs of these proceedings in the amount of $1,110.40 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202, within thirty days of the date of this opinion.