The PEOPLE of the State of
Colorado, Complainant,

v.

Patrick Anene EGBUNE, Respondent.

No. GC98A13.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

May 12, 1999.

This matter was heard on March 17, 1999, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, CYNTHIA F. COVELL and TOM MCNAMARA, both members of the Bar.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND IMPOSITION OF SANCTIONS

### I. CHARGES

The People charged that Egbune's actions constitute violations of The Colorado Rules of Professional Conduct ("Colo.RPC") 1.5(a)(charging an unreasonable fee); Colo. RPC 1.15(b)(failing to segregate property claimed by another); Colo. RPC 1.15(c)(failing to keep property separate); Colo. RPC 8.4(a)(violating a rule of professional conduct); Colo. RPC 8.4(c)(engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); Colo. RPC 8.4(d)(engaging in conduct that is prejudicial to the administration of justice), and Colo. RPC 8.4(h)(engaging in conduct adversely reflecting on a lawyer's fitness to practice law). At the close of the People's case, Egbune moved to dismiss all of the People's charges pursuant to C.R.C.P. 50. The PDJ found, viewing the evidence presented in the light most favorable to the People, and drawing every reasonable inference therefrom, that the People had failed to introduce sufficient evidence to convince a reasonable mind by clear and convincing proof that Egbune had violated Colo. RPC 8.4(d) and, accordingly, dismissed that charge.

The PDJ and hearing board members heard testimony from the People's witnesses Patrick Anene Egbune, Philip Cockerille and Donna Rodriguez. The PDJ and hearing board members heard testimony from Eg-

bune's witnesses, Egbune himself and Franklin D. Patterson. The People's Exhibits 1 through 13, 16, 17, 19 through 28 and Exhibit 14, p. 4, lines 6 through 11 were admitted into evidence. Egbune's Exhibits A through G, and I through N were admitted into evidence. Exhibit N was admitted for the limited purpose of showing state of mind. The PDJ and hearing board considered the testimony and exhibits admitted, assessed the credibility of the witnesses, and make the following findings of fact, which were established by clear and convincing evidence:

## II. FINDINGS OF FACT

At the time of the hearing in this matter, Egbune had been suspended pursuant to *In the Matter of Patrick Anene Egbune,* 971 P.2d 1065 (Colo.1999) *cert. denied,* 526 U.S. 1115, 119 S.Ct. 1762, 143 L.Ed.2d 793 (1999).

On July 22, 1994 Gezachew Ambaw ("Ambaw") was involved in an automobile accident. He retained Philip R. Cockerille ("Cockerille"), an attorney licensed to practice law in Colorado, on July 25, 1994 under a contingent fee agreement[1] to represent his interests in a claim against the driver of the other car involved in the accident. Cockerille performed extensive work on Ambaw's behalf, including arranging medical treatment, negotiating with CNA Insurance ("CNA"), the insurance carrier of the other driver, and meeting with and providing legal advice to Ambaw. On March 22, 1996 Ambaw was involved in a second accident and asked Cockerille to handle that matter as well. Cockerille agreed to do so.

By May 31, 1996 Cockerille had secured an offer of $15,000 from CNA to settle Ambaw's first accident claim. Ambaw declined to accept the offer. On August 9, 1996 Cockerille forwarded a lengthy letter to Ambaw analyzing the merits and weaknesses of Ambaw's case, setting forth the risks of litigation and its potential costs, and recommending that Ambaw accept the $15,000 offer. Ambaw again declined, and increased his demand to $150,000. Cockerille approached CNA again in an effort to obtain a larger offer. As of September 6, 1996 Cockerille had convinced CNA to increase their offer to $17,500 to settle the July 22, 1994 accident claim. Cockerille recommended that Ambaw accept the offer. Ambaw refused the offer.

Unbeknownst to Cockerille, Ambaw signed a contingent fee agreement with Egbune dated September 2, 1996.[2] On September 9, 1996 Cockerille received a letter from Ambaw dated September 2, 1996 terminating their attorney-client relationship, directing Cockerille to have no further communication with Ambaw, and requesting Cockerille to forward all of the case files to Egbune. The same day he received the termination letter, Cockerille sent a letter to CNA with a copy to Egbune which stated:

> As of today, Mr. Ambaw has discharged me and states that he has hired attorney Patrick Egbune. However, I assert a lien against any amounts paid to or on behalf of him, based on the extensive work on this file over the past two years.

On September 10, 1996 Cockerille sent a letter directly to Egbune, which referred to the transfer of the case. In the letter, Cockerille discussed the significant investment of time he had dedicated to both of Ambaw's cases, and the outstanding offer to settle the July 22, 1994 accident with CNA for $17,500. He closed by stating, "You are on notice not to attempt to settle these cases

---

1. The contingent fee agreement provided that Cockerille would receive 33 1/3% of the gross amount collected before deductions, except amounts identified as payments of medical bills. The contingent fee agreement was later amended to include representation for a March 22, 1996 automobile accident.

2. The Egbune contingent fee agreement provided that Egbune would receive between 35% and 40% of the gross amount collected, and made no provision for excluding from that amount payments of medical bills. The Egbune fee agreement also specifically provided in paragraph sixteen: "Attorney is entitled to his full contingent share of any settlement ... even though client discharges him or obtains substitution for attorney before such settlement is made ..."

without honoring my liens." On September 13, 1996, during a conversation with Egbune, Cockerille reasserted his lien claim.

Between September 2, 1996 and September 24, 1996, Egbune spoke with CNA on several occasions, examined Ambaw's medical treatment records, conducted research at the law library to determine representative settlement ranges in cases similar to Ambaw's, and spoke with Ambaw on several occasions regarding his claim and the appropriate settlement range. Egbune attempted without success to convince CNA to offer more than the $17,500. By September 24, 1996, Ambaw agreed to accept $17,500 in settlement of his claim. Egbune prepared and Ambaw executed settlement documentation. CNA issued settlement funds on September 30, 1996 to Ambaw and Egbune. Egbune disbursed all of the settlement funds to Ambaw, less $6,122 as payment of the 35 % contingent fee, which Egbune retained for himself. Egbune did not advise Cockerille of the settlement, nor did he set aside any portion of the settlement funds to address Cockerille's claimed interest.

On November 4, 1996, Cockerille, not being aware of the settlement, once again contacted Egbune regarding the status of the Ambaw matter. Between September 1996 and July 1997, Cockerille attempted on at least three occasions to contact Egbune in order to determine the status of Ambaw's cases and remind Egbune of the imminent statute of limitations deadline. Egbune either did not return Cockerille's telephone calls or did not disclose to him the status of the case.

On July 21, 1997 Cockerille contacted CNA and was informed that the case had settled on September 30, 1996 for $17,500. CNA further informed Cockerille that the settlement check had been delivered to Egbune and was made payable to Egbune and Ambaw.

 Thereafter, Cockerille filed suit in Denver County Court against CNA seeking enforcement of a lien against the funds paid to Ambaw based upon his letter of September 9, 1996. CNA named Ambaw and Egbune in the action as third-party defendants. During the course of the county court proceeding, Cockerille submitted evidence to the court that he had expended 75.6 hours of professional time on the Ambaw case. Ultimately, the trial court ruled that Cockerille had failed to establish any lien against CNA and dismissed the action, including the third party claim. On appeal to the district court, the ruling of the trial court was affirmed.[3]

Egbune admitted during the course of the disciplinary proceeding that Cockerille had an interest in the settlement funds.

### III. CONCLUSIONS OF LAW

Patrick Anene Egbune has taken and subscribed the oath of admission, was admitted to the bar of this court on May 19, 1991 and is registered upon the official records of the Supreme Court, attorney registration number 20397. Egbune is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

The People established by clear and convincing evidence that Egbune disbursed all settlement proceeds to Ambaw, less $6,122 which he retained for himself, after having been placed on notice that Cockerille claimed an interest in any settlement funds. Egbune did not retain a portion of the proceeds to satisfy Cockerille's claimed interest. The Colorado Rules of Professional Conduct prohibit such conduct by an attorney. Colo. RPC 1.15(b) and (c) provide:

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall, promptly or otherwise as permitted by law or by

---

**3.** Egbune moved to dismiss all charges in this disciplinary case during opening argument based upon the ruling of the county court, and the affirmance of that ruling by the district court, that Cockerille held no valid lien against the funds paid by CNA. The PDJ denied Egbune's oral motion. Neither the county court ruling nor the district court affirmance relieved Egbune of his obligation under the Colorado Rules of Professional Conduct to render an accounting or keep the disputed funds separate during the pendency of that action. Colo. RPC 1.15(b) and (c).

agreement with the client, deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

■ Having received the settlement funds from CNA, Egbune had an affirmative obligation to respond to Cockerille's inquiry as to the status of the settlement, and render an accounting with regard to the funds. *People v. Marsh,* 908 P.2d 1115, 1117 (Colo.1996)(holding that respondent violated Colo. RPC 1.15(b) when he failed to share any of the attorney fees with another lawyer who had worked on the matter, nor did he render an accounting); *People v. Robertson,* 908 P.2d 96, 99 (Colo.1995)(holding that respondent violated Colo. RPC 1.15(b) when, following settlement of a personal injury action, the respondent failed to pay the full amount owed to the clinic after he received the funds in trust). By failing to address Cockerille's claim and instead disbursing the full measure of attorney's fees to himself, Egbune exposed Ambaw to the possibility of becoming embroiled in a dispute with Cockerille and Egbune over the payment of their respective attorney's fees.

■ Because he was on notice of Cockerille's claimed interest, at a minimum Egbune was required to segregate and keep separate such proceeds from his own funds until the dispute over the funds was resolved. *See* Colo. RPC 1.15(a). By failing to do so, he violated Colo. RPC 1.15(c). *People v. Campbell,* 932 P.2d 312, 313 (Colo.1997)(re-

spondent stipulating to a violation of Colo. RPC 1.15(c) where he sent chiropractor a "letter of protection" promising that the provider's fees would be paid from the proceeds of the case, and subsequently paying only a portion of the bill).

■ Egbune's receipt and disbursement of the settlement funds while on notice of Cockerille's claimed interest, coupled with Egbune's failure to disclose information to Cockerille, also constituted a. violation of Colo. RPC 8.4(c)(a lawyer shall not engage in dishonesty, misrepresentation, deceit or fraud). Although silence alone does not normally constitute deceit or misrepresentation, under the circumstances of this case, Egbune had an affirmative obligation under Colo. RPC 1.15(b) to provide an accounting. His failure to do so and thereafter stand mute in the face of several inquiries by Cockerille rises to the level of deceit and misrepresentation. *People v. Harding,* 967 P.2d 153, 154 (Colo.1998)(respondent stipulating to his failure to hold in trust and segregate disputed third party funds violated Colo. RPC 8.4(c)); *Campbell,* 932 at 313 (respondent stipulating to fact that he engaged in misrepresentation by failing to inform a provider of the amount of settlement and pay him the agreed upon amount out of the proceeds); *Robertson,* 908 P.2d at 99 (holding that attorney's failure to pay full amount owed to client's treatment clinic after he received funds in trust violated Colo. RPC 8.4(c)).

■ The People also contended and the PDJ and hearing board found that Egbune's conduct constitutes a violation of 1.5(a)(a lawyer's fee shall be reasonable). Egbune collected a fee of $6,122 under a 35 % contingent fee agreement. By his own admission, Egbune, over the course of a three-week period, did no more than make a few phone calls to the insurance adjuster, meet with his client, examine some medical treatment records and do some research at the law library to determine the reasonable range of settlement for claims similar to Ambaw's. Applying the test to determine the reasonableness of attorneys' fees set forth in Colo. RPC

1.5(a) [4] and *Law Offices of J.E. Losavio, Jr. v. Law Firm of Michael W. McDivitt, P.C.,* 865 P.2d 934, 936 (Colo.App.1993), *infra,* it is possible that a 35 % contingent fee for work performed during a three-week period of time may constitute a reasonable fee. In this case, however, it does not. The amount of the ultimate settlement—$17,500—which Egbune advised his client to accept, had already been offered by the insurance carrier to Ambaw through Cockerille before Egbune began his representation. Egbune's work did not enhance the value of Ambaw's claim, nor did it expedite the receipt of the settlement proceeds. Although Egbune may be entitled to some fee for the services he performed, a full contingent fee of 35 % cannot be reasonable when Egbune did little more than accept the offer which CNA had already extended to the client through the client's prior attorney. *Beeson v. Industrial Claim Appeals Office of the State of Colorado,* 942 P.2d 1314, 1316 (Colo.App.1997) *cert. denied* (Sept. 8, 1997)(holding that various factors measure the reasonableness of the attorney fee but no one factor is determinative, and the weight given to any factor depends on the circumstances of each case); *Law Offices of J.E. Losavio, Jr.,* 865 P.2d at 936, (citing Colo. RPC 1.5 and holding that certain factors provide a basis for a court's evaluation of whether attorney fees are reasonable, including: the time and labor required, the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services, and whether the fee is fixed or contingent). *Robertson,* 908 P.2d at 97.

■ Finally, the People charged Egbune with violations of Colo. RPC 8.4(a)(a lawyer shall not violate the Rules of Professional Conduct) and Colo. RPC 8.4(h)(a lawyer shall not engage in conduct that reflects adversely on his fitness to practice law). The fact that Egbune has been found to have violated several provisions of the Rules of Professional Conduct, 1.5(a), 1.15(b), 1.15(c), and 8.4(c), establishes a separate violation of Colo. RPC 8.4(a). Under the circumstances of this case, however, the separate violation of Colo. RPC 8.4(a) does not enhance the sanction to be imposed.

■■ In contrast, the charge under Colo. RPC 8.4(h) does give rise to an enhanced sanction. Under Colo. RPC 8.4(h), the totality of the attorney's conduct must be examined. *Cf. People v. Masson* 782 P.2d 335, 336 (Colo.1989)(viewing the attorney's conduct in light of the totality of circumstances). Egbune entered a pre-existing case on behalf of a client after substantially all of the necessary legal work had been performed; he accepted a settlement amount on behalf of his client which had been advanced before Egbune was involved; he collected a 35 % contingent fee from the client even though his involvement did nothing to enhance his client's recovery; he ignored the client's previous attorney's claim for a portion of the settlement proceeds; he ignored his obligations under the Rules of Professional Conduct, and he exposed his client to potential

---

4. Colo. RPC 1.5 **Fees:**

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client of by the circumstances; the nature and length of the professional relationship with the client;

(6) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(7) whether the fee is fixed or contingent.

liability as to the prior attorney's request for payment of attorney's fees. Such conduct adversely reflects upon Egbune's fitness to practice law, and constitutes a violation of Colo. RPC 8.4(h). *See People v. Theodore,* 926 P.2d 1237, 1242–43 (Colo.1996)(holding that attorney's engaging in conduct involving dishonesty amounts to conduct that adversely reflects on his fitness to practice law).

## IV. IMPOSITION OF SANCTIONS

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards* ") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 4.12 provides:

> Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

■ Egbune knew the settlement proceeds belonged to his client. He further knew that both he and Cockerille claimed an interest in those proceeds for payment of attorney's fees. Egbune's failure to comply with the mandatory provisions of the safekeeping rules (Colo. RPC 1.15(b) and Colo. RPC 1.15(c)) and his improper payment of the disputed attorney fees portion of the settlement to himself exposed his client to potential injury. Consequently, Egbune's misconduct warrants a period of suspension.

ABA *Standard* 7.2 provides:

> Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

Egbune charged an unreasonable fee to his client and mishandled funds claimed by another. He failed to disclose information he was under a duty to disclose in order to conceal his conduct and deceive Cockerille, a third party. His conduct was knowing and it posed the potential of causing injury to his client. Under this ABA *Standard* a period of suspension is also warranted.

■ The PDJ and hearing board considered matters in mitigation and aggravation pursuant to ABA *Standards* 9.3 and 9.2 respectively. By way of aggravation, Egbune has been previously suspended from the practice of law for one year and a day, *see id.* at 9.22(a); he engaged in the misconduct with a selfish and dishonest motive, *see id.* at 9.22(b); he refused to acknowledge the wrongful nature of the misconduct, *see id.* at 9.22(g), and he exhibited indifference to making restitution, *see id.* at 9.22(j). In mitigation, Egbune made full and free disclosure to the disciplinary counsel, *see id.* at 9.32(e). The factors in aggravation outweigh the factors in mitigation and further justify a period of suspension.

■ The misconduct in this case involves violations of duties to the profession and duties to a client and, consistent with precedent and the ABA *Standards,* requires a moderate period of suspension. *Harding,* 967 P.2d at 155(attorney consenting to a one year and one day suspension for, among other things, violations of Colo. RPC 1.15(a), Colo. RPC 1.15(c), Colo. RPC 8.4(c) and Colo. RPC 8.4(h)); *People v. Sather,* 936 P.2d 576, 579 (Colo.1997) (holding that a thirty-day suspension was warranted for attorney's misconduct including charging excessive or unreasonable fees and considering significant factors in mitigation). Taking into account the violations proven, the mitigating and aggravating circumstances, and the need for protection of the public, the PDJ and the hearing board have concluded that a six-month suspension from the practice of law is appropriate. Moreover, since the misconduct in this case is unrelated to and distinct from the misconduct giving rise to *In the Matter of Patrick Anene Egbune, supra,* for which Egbune is currently suspended, the suspension ordered herein shall be imposed consecutively to the current suspension imposed upon Egbune. *See People v. Primavera,* 942 P.2d 496, 499 (Colo.1997).

The People requested that, as part of any sanction, the PDJ and hearing board order Egbune to disgorge to Cockerille the $ 6,122 contingent fee he took from the Ambaw settlement funds. The PDJ and hearing board decline to do so. Insufficient evidence was presented at the trial to enable a finding by clear and convincing evidence either the reasonableness of Cockerille's fee or the necessity of the work he performed. *See Beeson,* 942 P.2d at 1316; *Losavio,* 865 P.2d at 936. Similarly, although there was clear and convincing evidence that the $ 6,122 contingent fee received by Egbune was not reasonable, the evidence was insufficient to establish what fee, if any, was reasonable in light of the tasks he did perform. Consequently, the determination of how the $ 6,122 should be divided between Egbune, Cockerille and Ambaw is best left to another forum.

The PDJ and hearing board concluded that the funds should be placed in interpleader in the registry of the court and Egbune should bring an interpleader action to determine the rightful apportionment of the $6,122.

### V. ORDER

It is ORDERED as follows:

1. Patrick Anene Egbune is suspended from the practice of law for a period of six (6) months. Such suspension shall commence on the day Egbune's suspension imposed in *In the Matter of Patrick Anene Egbune, supra,* expires.

2. The Office of Regulation Counsel shall provide notice forthwith to the Office of the Presiding Disciplinary Judge of the expiration date of Egbune's prior suspension.

3. Egbune shall commence an interpleader action pursuant to C.R.C.P. 22 or institute an appropriate action for the purpose of determining the ownership of the disputed funds within 60 days of the entry of this Order. As part of such proceeding, Egbune shall, at the time of filing the action, pay the sum of $6,122 plus 8% interest from September 30, 1996 into the registry of the court. In the alternative, Egbune shall file with the PDJ a Notice of Settlement signed by all parties who may have a claim to the disputed funds, which would provide notice to the PDJ and the People that the dispute as to the funds has been resolved. Should this alternative be chosen, the Notice of Settlement shall be filed sixty (60) days from the date of this Order.

4. Prior to any reinstatement, Egbune shall establish to the satisfaction of the Reinstatement Hearing Board that the C.R.C.P. 22 action, or other appropriate action, has been filed, the sums specified have been paid into the registry of the court, and the matter is proceeding toward judgment in due course or has been resolved, or the distribution of the disputed amount has been resolved by agreement between the parties.

5. Egbune shall pay the costs incurred in this proceeding. The People shall file an Itemization of Costs within ten (10) days of the date of this Order; and Egbune shall have five (5) days in which to file a Response thereto.