The PEOPLE of the State of
Colorado, Complainant,

v.

Thomas Free MARMON, Attorney–
Respondent.

No. 94SA442.

Supreme Court of Colorado,
En Banc.

Sept. 11, 1995.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Assistant Disciplinary Counsel, Denver, for Complainant.

George McLachlan, Lamar, for Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline case forged three court documents to conceal his neglect of an adoption case. A hearing panel of the supreme court grievance committee approved the recommendation of a hearing board that the respondent be disbarred. The respondent excepted to the panel's action on the ground that disbarment is too severe a sanction, and that he should instead be suspended for three years. He has also moved that the disciplinary proceedings be dismissed because they supposedly violate the multiple punishment component of the Double Jeopardy Clause. We conclude that the disciplinary proceedings did not violate double jeopardy, and that the hearing panel's recommendation of disbarment is appropriate.

I.

A lawyer discipline proceeding is not a criminal proceeding, *People v. Harfmann*, 638 P.2d 745, 747–48 (Colo.1981), and it therefore is not a successive criminal prosecution in violation of constitutional protections against double jeopardy.[1] The proper question is whether, following a finding that a disciplinary violation or violations occurred, the imposition of a disciplinary sanction constitutes punishment for purposes of the multiple punishment component of double jeopardy. We shall address this issue following discussion of the respondent's substantive ethical violations and in the consideration of what sanction, if any, is appropriate.

The respondent was admitted to the Colorado bar in 1973. The parties entered into an unconditional stipulation of facts. After considering the stipulation and the testimony of the complainant's two witnesses and of the respondent, the hearing board found the following established by clear and convincing evidence.

A baby was born in February 1987 to a woman who had previously decided to relinquish custody of the child upon birth. Immediately after the birth, a couple traveled to Texas to take custody of the child, but did not meet the birth mother. The couple were given a document signed by the mother, however, granting them power of attorney. The birth mother signed a petition for relinquishment in Texas in May 1987. The couple retained the respondent in July 1987 to help them adopt the child. When he was hired, the respondent was serving as a part-time municipal court judge in La Junta, and as a part-time county court judge in Bent County, Colorado.

The respondent filed a petition for adoption in the Bent County District Court. At a hearing held July 18, 1989, the district judge indicated that the adoption decree would be entered once the respondent submitted the appropriate decree and relinquishment documents.

1. The Fifth Amendment to the United States Constitution provides in part, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...."

In October 1991, the respondent's secretary discovered two district court files pertaining to the adoption in the respondent's office. The respondent had checked out the files almost two years earlier. The secretary returned the files to the Clerk of the Combined Courts of Bent County. Seeing that no action with respect to the adoption had taken place since the July 1989 hearing, the clerk mailed the respondent a dismissal notice. When he did not respond, the district judge dismissed the adoption proceedings in November 1991.

## A.

The respondent's clients tried to communicate with him in early 1992 about the adoption because they needed a birth certificate for the child to be admitted to school. The respondent prepared a letter for his clients to use which represented that the clients were the adoptive parents and that the respondent was in the process of securing the birth certificate.

In October 1992, the respondent prepared two separate reports of adoption and forged the signature of the clerk of the combined courts to each. The reports falsely stated that the child had been adopted by the respondent's clients. He forwarded one of the fictitious reports of adoption to Texas, and, based on the report, the Texas authorities sent the birth certificate to the respondent at his home address as he requested. The respondent then delivered the birth certificate to his clients.

The respondent stipulated, and the board found, that the foregoing conduct violated DR 1–102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude); DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer); and DR 7–102(A)(5) (in representing a client, a lawyer shall not knowingly make a false statement of law or fact).

## B.

The respondent prepared a final decree of adoption, which he dated July 22, 1990. Since no such valid decree existed, the respondent falsified the district judge's signature on the decree by photocopying the judge's signature from another document and transferring it to the fictitious decree. The respondent's original intent in making the document was to use it to conceal his neglect of the adoption case. He did not, however, actually use the forged decree. The court clerk discovered it in the court file, but according to the stipulation between the parties, there is no evidence that the respondent himself placed it there.

The respondent was charged with two counts of second degree forgery, § 18–5–103(1)(c), 8B C.R.S. (1986), a class 4 felony. On August 11, 1994, the district court entered an order for a deferred prosecution pursuant to a stipulation between the respondent and the district attorney. See § 16–7–401, 8A C.R.S. (1994 Supp.). Prosecution of the second degree forgery count relating to the falsification of the court clerk's signatures was deferred for two years provided that the respondent complied with certain conditions, including that he not practice law for compensation for two years, and that he provide a signed confession of his forgery of the combined court clerk's signature on the reports of adoption. The count of second degree forgery pertaining to his forgery of the adoption decree was dismissed.

■ Although he admitted falsifying the adoption decree with the district judge's signature with the intent to conceal his negligence, the respondent asserted that he did not commit any disciplinary violation because it cannot be proved by clear and convincing evidence that he actually used or attempted to use the decree.

■ The hearing board correctly rejected this argument, concluding that the important point was that the respondent falsified the adoption decree with the original intent to use it for a fraudulent purpose, and not how the document came to be in the court file. The criminal statute that applied during the relevant time period provided that the

offense of second degree forgery was complete upon the making of the forged document with intent to defraud, *or* the uttering of the instrument:

> **18–5–103. Second degree forgery.** (1) A person commits second degree forgery, if, with intent to defraud, he falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
>
> ....
>
> (c) A written instrument officially issued or created by a public office, public servant, or government agency....
>
> (2) Second degree forgery is a class 4 felony.

§ 18–5–103, 8B C.R.S. (1986 & 1992 Supp.). *See Wright v. People,* 116 Colo. 306, 310, 181 P.2d 447, 449 (1947) (the offense of forgery may be committed *either* by the making of a false check *or* by attempting to pass the check as true and genuine).[2] The hearing board properly determined that the respondent's forgery of the adoption decree, a class 4 felony, violated DR 1–102(A)(3) (illegal conduct involving moral turpitude, *see People v. Franco,* 738 P.2d 1174, 1175 (Colo.1987) (conviction of conspiracy to commit second degree forgery is a crime of moral turpitude)); DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (conduct prejudicial to the administration of justice); and DR 7–102(A)(5) (in representing a client, a lawyer shall not knowingly make a false statement of law or fact).

## II.

■ The hearing panel approved the board's findings and recommendation that the respondent be disbarred. The respondent has excepted to the panel's recommendation as too severe. In the alternative, he has moved that the proceedings be dismissed because they violate double jeopardy. In his closing argument before the hearing board, the respondent's counsel stated:

He has been disciplined in the judiciary Committee proceedings. Now, whether, quote, he was entitled to retire sometime is no different, in my book, than permitting an attorney to resign from the bar; the effect is there. He has been disciplined to a greater extent in that act or proceeding, and it's basically for the same acts, basically, for the very same acts.

*I'm not saying that it's double jeopardy. I'm not making any excuses for the man. I'm simply saying don't compound the punishment.*

(Emphasis added.) In his opening brief, however, the respondent advanced the argument that he has been subjected to *triple* jeopardy for the same acts of misconduct:

[The respondent] was "permitted" to resign after the investigative proceedings were conducted against him in his capacity as a county judge. He was criminally proceeded against and, although not incarcerated, has agreed not to practice law as a compensated attorney for a period of two years and is subject to have charges reinstated against him with a confession of wrongdoing already in the hands of the prosecutor in the [e]vent he fails to comply with the terms of the plea agreement [sic]. He is presently being subject to sanctions in [these] proceedings.

■ In *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court held that civil, as well as a criminal, proceedings "may advance punitive as well as remedial goals," *id.* at 447, 109 S.Ct. at 1901, and that it was therefore necessary to look to the facts of the individual case "for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause...." *Id.* at 447–48, 109 S.Ct. at 1901. Thus:

From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either

---

**2.** Nor did the respondent's claimed non-use of the forged adoption decree constitute the affirmative defense of abandonment and renunciation. *See* § 18–2–101(3), 8B C.R.S. (1986).

Abandonment and renunciation of criminal purpose are not affirmative defenses to *completed* crimes. *See id.*

retributive or deterrent purposes, is punishment, as we have come to understand the term. We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction *to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.*

*Id.* at 448–49, 109 S.Ct. at 1902 (citation omitted; emphasis added). *See also Dep't of Revenue v. Kurth Ranch,* —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994); *Austin v. United States,* —— U.S. ——, ——, 113 S.Ct. 2801, 2806, 125 L.Ed.2d 488 (1993).

The record of this proceeding, however, contains nothing supporting the proposition that the respondent was "punished" by being permitted to resign (or retire) from his county judge position. In addition, because the criminal prosecution for second degree forgery has been deferred, there has been no trial, the respondent has not entered a guilty plea, a jury has not been sworn, and jeopardy has not attached in the criminal proceeding. *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062–63, 43 L.Ed.2d 265 (1975) (jeopardy attaches in jury trial when jury is sworn; in nonjury trial, when the court begins to hear evidence).

■ Even if jeopardy had attached in the criminal proceeding, the levying of an appropriate disciplinary sanction would *not* constitute punishment for purposes of the multiple punishment component of double jeopardy. The Supreme Court cases analyzing multiple punishment have involved fines (*Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487), and taxes (*Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767). The Court has therefore not considered what factors are used to determine whether suspension or revocation of a lawyer's license constitutes punishment for double jeopardy purposes.

In a lawyer discipline case "where the respondent has already been punished by the criminal justice system, our aim in determining the level of discipline is not retribution, but the protection of the public." *People v. Martin,* 897 P.2d 802, 804 (Colo.1995). In determining the proper disposition, therefore, our analysis begins and ends with the disciplinary sanction necessary to protect the public, and thus is not punishment for double jeopardy purposes. A contrary conclusion would lead to the absurd result that lawyers convicted of criminal offenses could never be disciplined. The respondent's motion to dismiss is therefore denied.

■ The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) provides that, in the absence of mitigating circumstances, disbarment is appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; ... or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA *Standards* 5.11. In addition, the respondent's misrepresentations to his clients about the status of the adoption would warrant at least a suspension. *Compare id.* at 4.62 (suspension generally appropriate when a lawyer knowingly deceives a client and causes injury or potential injury) *with id.* at 4.61 (disbarment appropriate when lawyer knowingly deceives a client with intent to benefit the lawyer, causing serious or potentially serious injury).

The respondent has prior discipline, which is an aggravating factor. *Id.* at 9.22(a). He received letters of admonition in 1988 and 1991, the latter being for neglect of a probate matter. The board also found that the respondent had a dishonest or selfish motive, *id.* at 9.22(b); had engaged in a pattern of misconduct, *id.* at 9.22(c); and had substantial experience in the practice of law, *id.* at 9.22(i). Moreover, the respondent's clients were vulnerable victims. *Id.* at 9.22(h). In mitigation, the respondent cooperated in the disciplinary proceedings, *id.* at 9.32(e); and has been subjected to the conditions imposed by the deferred prosecution, *id.* at 9.32(k).

The respondent was serving as a part-time county judge when he forged the signatures of the court clerk and the district judge to fictitious documents. Even taking the mitigating factors into account, therefore, we agree with the hearing board and hearing panel that disbarment is the only proper result when a lawyer departs to this extent from basic honesty and integrity in order to conceal his negligence. We therefore accept the panel's recommendation, and order that the respondent be disbarred.

### III.

It is hereby ordered that Thomas Free Marmon be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after the date on this opinion. It is further ordered that Marmon pay the costs of this proceeding in the amount of $930.97 within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.