In the Matter of Jerry E. CARDWELL, Attorney–Respondent.

No. 01SA251.

Supreme Court of Colorado, En Banc.

June 24, 2002.

John Gleason, Regulation Counsel, Gregory G. Sapakoff, Assistant Regulation Counsel, Denver, Colorado Attorneys for Petitioner.

George T. Ashen, Law Firm of George T. Ashen, Denver, Colorado, Attorney for Attorney Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

Jerry E. Cardwell is the respondent in this lawyer regulation proceeding. While assisting his client to plead guilty in a driving under the influence (DUI) case, Cardwell failed to disclose to the prosecutor and to the court that his client had previously been convicted of driving while ability impaired (DWAI). As a result, the trial court accepted a plea agreement, found the client guilty of the reduced offense of DWAI (first of-

fense), and suspended the client's jail sentence. This was not a legal sentence for a defendant who has previously been convicted of DUI or DWAI. A hearing board consisting of the presiding disciplinary judge [1] and two other members found that Cardwell's conduct violated the Rules of Professional Conduct and ordered that he be suspended for three years, with eighteen months of the suspension stayed. Cardwell appealed the board's decision and order. C.R.C.P. 251.27. We affirm.

## I.

Jerry E. Cardwell was admitted to practice law in Colorado in 1983. A recitation of the procedural history of this case is important for us to analyze the issues Cardwell presents in this appeal.

This case arose and was brought under our old disciplinary system. In 1998, a hearing panel of the former supreme court grievance committee approved a hearing board's findings and recommendation that Cardwell be publicly censured for his misconduct. *See* C.R.C.P. 241.14, -.15, 12 C.R.S. (1998). Reviewing the panel's and board's findings and recommendation, we could not reconcile the board's findings and conclusions because they were inconsistent. We therefore remanded the case for a new hearing under the current attorney regulation system.

The hearing was held on April 16, 2001 and the hearing board made the following findings by clear and convincing evidence.

## A.

Cardwell represented the client in two unrelated DUI cases, the first in Jefferson County and the second in Arapahoe County. After the client was arrested in Jefferson County on September 29, 1995, he hired Cardwell to represent him. But before that case was resolved, the client was arrested again for DUI in Arapahoe County. He retained Cardwell for the second case. On February 5, 1996, with Cardwell present, the

---

1. This court appointed the presiding disciplinary judge (PDJ), C.R.C.P. 251.16, who serves as the presiding officer of the three-member hearing board. C.R.C.P. 251.18(b). The other two members of the board are selected from a pool of persons appointed by this court. C.R.C.P. 251.17(a).

client pleaded guilty, under a plea agreement, to DWAI in Jefferson County.[2] He was sentenced to probation for the DWAI and was referred for an alcohol evaluation. The court records indicated that the level of the client's alcohol education and therapy would be determined by the court after the evaluation was done.

On May 6, 1996, Cardwell and his client appeared for trial in the Arapahoe County Court. While waiting for the case to be called, the client told Cardwell that he had changed his mind and wanted to plead guilty. Cardwell negotiated a plea agreement with the Arapahoe County District Attorney. He did not inform the district attorney, however, about the Jefferson County case. Both Cardwell and his client signed a plea motion and agreement containing the condition that the client had "[n]o prior or pending alcohol related driving offenses in this or any state." Cardwell had told his client about the mandatory jail sentence that would be imposed for a conviction of a second alcohol-related driving offense. *See* § 42–4–1301(9)(b)(II), 17 C.R.S. (Supp.1996). When he signed the document, Cardwell knew that his client had previously been charged with an unrelated DUI and had entered a guilty plea to DWAI in Jefferson County. The transcript of the May 6 sentencing hearing provides as follows:

COURT: ... [Your client] is going to be entering a plea of guilty today to a charge of driving while impaired, *first offense*, is that correct?

MR. CARDWELL: *That is correct your Honor.*

COURT: And all other charges would be dismissed?

MR. CARDWELL: That is correct. That is our understanding. I don't know if the Court is able to do this—*go for immediate sentencing or not?*

COURT: Have you ever had an alcohol driving offense before?

MR. CARDWELL: *No sir.*

2. He also pleaded guilty to illegal use of a weapon and received a deferred judgment. That plea

COURT: [To the client] Okay, is that your representation ... ?

[CLIENT]: Yes sir.

COURT: Okay, never ever, at any time, any place?

[CLIENT]: No.

COURT: Okay. *We will be able to do that then.*

(Emphasis added.) Based on these representations, and unaware of the prior offense, Judge Feldman sentenced the client as a first time offender. *See* § 42–4–1301(9)(b)(I), 17 C.R.S. (Supp.1996). The client was sentenced to twelve months' probation, with no jail time. At the time when the client was arrested in Arapahoe County for DUI, section 42–4–1301(9)(b)(II), 17 C.R.S. (Supp. 1996), provided in part:

(II) Upon a conviction of a second or subsequent [DWAI] violation ..., which violation occurred within five years of the date of a previous violation, for which there has been a conviction, of paragraph (b) of subsection (1) of this section, the offender shall be punished by imprisonment in the county jail for not less than forty-five days nor more than one year, and, in addition, the court may impose a fine of not less than three hundred dollars nor more than one thousand dollars. *The minimum period of imprisonment as provided for such violation shall be mandatory, but the court may suspend up to forty days of the period of imprisonment* if the offender complies with the provisions of subparagraph (I) of paragraph (f) of this subsection (9).

(Emphasis added.) Because the client had previously been convicted of DWAI, the judge did not have the authority to suspend all of the jail time. As required, the client reported to Arapahoe County probation to begin the alcohol evaluation process. He spoke to a probation officer who was an alcohol and drug evaluation specialist on May 17, 1996. The probation officer's report of that meeting stated:

is not at issue in this case.

[The defendant] appeared visibly upset upon arriving at the Probation Department. The defendant informed this officer he was upset because his attorney recommended he plead guilty to a Driving While Ability Impaired, first offense, when he had already been convicted in Jefferson County on February 5, 1996 for Driving While Ability Impaired. [The defendant] informed this officer he was upset, worried, and not able to sleep because he believed he was misle[ ]d by his attorney and that he did not tell the truth in Court.

On May 31, 1996, after his client told him he wanted to proceed without counsel, Cardwell filed a motion to withdraw. Judge Feldman denied the motion and held a hearing on June 13, where he confronted Cardwell about his misrepresentations to the court. Cardwell stated that he mistakenly believed that his client's Jefferson County conviction was not final when he entered the plea in Arapahoe County. The judge had to correct the client's illegal sentence based on Cardwell's and his client's misrepresentations.

Cardwell was charged with various crimes because of his misrepresentations in the Arapahoe County case. On April 23, 1997, Cardwell pleaded guilty to attempting to influence a public servant, a class 4 felony, *see* § 18–8–306, 6 C.R.S. (2001),[3] and to perjury in the second degree, a class 1 misdemeanor, *see* § 18–8–503, 6 C.R.S. (2001).[4] Cardwell received a deferred judgment and a four year sentence on the felony count. He was required to pay $4000 in fines, attend ethics courses, and serve 200 hours of community service. Cardwell has satisfied all of the conditions of his probation.

The complaint before the hearing board charged Cardwell with violating eight provisions of the Rules of Professional Conduct and one procedural rule governing lawyer regulation proceedings.

The complainant moved for judgment on the pleadings under C.R.C.P. 12(c) with respect to violations of Colo. RPC 1.1, 8.4(b), 8.4(d), and C.R.C.P. 251.5(b). Cardwell confessed the motion and judgment was entered against him on those charges. He went to trial on the remaining charges.

### B.

Following the hearing, the board unanimously found that Cardwell had violated the following Rules of Professional Conduct. First, he violated Colo. RPC 1.2(d), which provides:

(d) A lawyer shall not counsel a client to engage, or assist a client in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

The board found that Cardwell knew that his client's oral and written statements in conjunction with his guilty plea in Arapahoe County were fraudulent, and that the court acted in reliance on those fraudulent representations.

▪ Second, Cardwell's conduct violated Colo. RPC 3.3(a)(1), which states, "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal...." The board determined that Cardwell's false statement to Judge Feldman was made knowingly and, because the court relied upon the misrepresentation in determining the appropriate sentence, was material. Cardwell argued that his false statements to the judge were made negligently because

---

3. Section 18–8–306, 6 C.R.S. (2001), provides:

Any person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

4. Section 18–8–503, 6 C.R.S. (2001), provides:

(1) A person commits perjury in the second degree if, other than in an official proceeding, with an intent to mislead a public servant in the performance of his duty, he makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law.

(2) Perjury in the second degree is a class 1 misdemeanor.

they arose out of his failure to research the meaning of "final conviction," and therefore did not violate Colo. RPC 3.3, because the rule requires a mental state of knowingly.[5] Cardwell testified that at the time of the guilty plea, he thought the argument could be made that his client's DWAI conviction in Jefferson County was not actually final because the judge had given them the opportunity to come back in and object to the recommendations of the probation department. In addition, Cardwell contended that his statements were made in the heat of the moment and were influenced by his zeal to help his client avoid jail. The hearing board concluded that Cardwell was precluded from arguing that his misrepresentations were merely negligent by his guilty pleas to perjury and influencing a public servant, and by C.R.C.P. 251.20, which provides that proof that a lawyer has been convicted of a crime "shall be conclusive proof of the commission of that crime by the [lawyer]."[6]

For the same reason, the board found that Cardwell had violated Colo. RPC 3.3(a)(2), which states that a "lawyer shall not knowingly ... fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client." Cardwell knew that his client made misrepresentations when pleading guilty in Arapahoe County, and that Judge Feldman relied on these representations in accepting the guilty plea and imposing a sentence.

The hearing board further found that by failing to disclose to the prosecutor in Arapahoe County that his client was misrepresenting the fact that he had not been convicted of a prior alcohol-related offense, Cardwell violated Colo. RPC 4.1(b). This rule provides, "In the course of representing a client a lawyer shall not knowingly ... fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6."

Finally, Cardwell's conduct in the Arapahoe County case violated Colo. RPC 8.4(c), which provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

#### C.

The PDJ and one hearing board member concluded that Cardwell's ethical violations warranted a three-year suspension, with eighteen months stayed. One board member would have suspended Cardwell for a year, with no requirement that he petition for reinstatement.

■ In analyzing the appropriate sanction, the majority concluded that disbarment was the presumed sanction for this type of misconduct. We agree. *See* ABA *Standards for Imposing Lawyer Discipline* 5.11, 6.11 (1991 & Supp.1992). Standard 6.11 provides:

> Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

ABA *Standards, supra,* at 6.11. Standard 5.11 states:

> Disbarment is generally appropriate when:

---

5. Simple negligence will not satisfy the scienter element required for a finding of dishonesty or misrepresentation. *See People v. Rader,* 822 P.2d 950, 953 (Colo.1992). In *In re Egbune,* 971 P.2d 1065, 1069 (Colo.1999), we held that a mental state of recklessness would suffice for a violation of Colo. RPC 3.3. " 'With one important exception [involving knowing misappropriation of property], we have considered a reckless state of mind, constituting scienter, as equivalent to "knowing" for disciplinary purposes.' " *Id.* (quoting *People v. Small,* 962 P.2d 258, 260 (Colo.1998)).

6. Moreover, we note that when Cardwell spoke with Judge Feldman, the judge never asked him whether his client had any prior *final convictions,* only whether he had any prior alcohol driving *offenses.* The term "offense" is broader than the term "conviction." *See* § 18–1–104(1), 6 C.R.S. (2001) ("The terms 'offense' and 'crime' are synonymous and mean a violation of, or conduct defined by, any state statute for which a fine or imprisonment may be imposed.") Thus, even if Cardwell believed that his client's Jefferson County conviction was not final, his client had still committed a prior alcohol-related driving offense, and his denial was false.

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; ... or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

*Id.* at 5.11. These standards' recommendations of disbarment reflect the seriousness of the misconduct that Cardwell committed.

In mitigation, the hearing board found that Cardwell had no previous disciplinary history, *see id.* at 9.32(a); he made a timely good-faith effort to rectify the consequences of his misconduct, *see id.* at 9.32(d); he cooperated in the disciplinary process, *see id.* at 9.32(e); he was relatively inexperienced in the practice of criminal law at the time of the misconduct, *see id.* at 9.32(f); Cardwell enjoys an excellent character and reputation in the community, *see id.* at 9.32(g); significant sanctions and penalties have already been imposed on him in the criminal case, *see id.* at 9.32(k); and he has expressed remorse, *see id.* at 9.32(*l*). The board also noted that delay in regulation proceedings can be considered a mitigating factor, *see id.* at 9.32(i), and that Cardwell has been practicing law during the pendency of these proceedings for five years without further violation of the Rules of Professional Conduct.

The board found two aggravating factors: Cardwell had a dishonest motive for the misconduct, *see id.* at 9.22(b), and he committed multiple offenses, *see id.* at 9.22(d).

The board further found that although Cardwell's client did not suffer significant harm as a result of his misconduct, the legal system did. However, because of the severe penalties Cardwell has already suffered in the criminal justice system, the board found disbarment unnecessary. The PDJ and one board member concluded that a three-year suspension was adequate to protect the interests of the public and the legal system. And, because Cardwell has been practicing law without further incident, the majority stayed eighteen months of the suspension. One board member concurred with the findings and conclusions of law, but disagreed on the sanction. She would have imposed a one-year suspension without the requirement of reinstatement proceedings.

## II.

On appeal, Cardwell raises three issues: (1) whether, following a criminal conviction, disciplinary sanctions that go beyond what are necessary to protect the public constitute successive punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment; (2) whether it was appropriate for this court to order a new hearing where the first board's factual findings were supported by substantial evidence; and (3) whether the second hearing board's inquiry into collateral estoppel (issue preclusion) principles after the close of the evidence violated due process.

### A. Double Jeopardy

Cardwell asserts that because he poses no future threat of harm to the public, a suspension must be deemed punishment for double-jeopardy purposes. Since he has already been criminally prosecuted for the conduct forming the basis of the regulation proceeding, and has been punished for it, he contends that he may not be subsequently punished (i.e., suspended) in these proceedings. We reject this argument because the suspension of a license to practice law is not criminal punishment.[7]

---

7. Cardwell's double-jeopardy argument is also marred by a faulty premise. Although he asserts that he poses no future threat to the public, the hearing board majority made no such finding. Instead, Cardwell primarily relies on an order of this court dated August 5, 1997, dissolving the previous order of immediate suspension against Cardwell. On July 15, 1997, we granted the regulation counsel's motion to immediately suspend Cardwell pursuant to former C.R.C.P. 241.16(d), 12 C.R.S. (1998) (providing for immediate suspension of a lawyer convicted of a serious crime) (now C.R.C.P. 251.20(d)). However, we subsequently granted Cardwell's motion to reconsider the immediate suspension on August 15, 1997.

We have considered a similar double-jeopardy issue twice before: *Deutschendorf v. People,* 920 P.2d 53 (Colo.1996) (driver's license revocation hearing followed by driving under the influence criminal proceeding) and *People v. Marmon,* 903 P.2d 651 (Colo.1995) (regulation proceeding).

In *Deutschendorf,* we held that an administrative driver's license revocation was not punishment for double-jeopardy purposes. 920 P.2d at 61. And in *Marmon,* we stated:

> Even if jeopardy had attached in the criminal proceeding, the levying of an appropriate disciplinary sanction would not constitute punishment for purposes of the multiple punishment component of double jeopardy....
>
> In determining the proper disposition [in a lawyer regulation proceeding], therefore, our analysis begins and ends with the disciplinary sanction necessary to protect the public, and thus is not punishment for double jeopardy purposes.

903 P.2d at 655. Our legal analysis in both *Deutschendorf* and *Marmon* relied heavily on the Supreme Court's decision in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). *Halper* had held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. at 448–49, 109 S.Ct. 1892; *see also Deutschendorf,* 920 P.2d at 58; *Marmon,* 903 P.2d at 655. Because administrative driver's license revocation and lawyer regulation can be "fairly characterized as remedial," we rejected double-jeopardy challenges in both cases. 920 P.2d at 61, 903 P.2d at 655.

The Supreme Court overruled *Halper* and its mode of analysis in *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), concluding "that *Hal-per's* deviation from longstanding double jeopardy principles was ill considered." 522 U.S. at 101,. 118 S.Ct. 488. However, *Hudson* does not help Cardwell in this case. *Hudson* held that *Halper* had deviated from traditional double jeopardy analysis in two ways:

> First, the *Halper* Court bypassed the threshold question: whether the successive punishment at issue is a "criminal" punishment. Instead, it focused on whether the sanction, regardless of whether it was civil or criminal, was so grossly disproportionate to the harm caused as to constitute "punishment." ... The second significant departure in *Halper* was the Court's decision to "asses[s] the character of the actual sanctions imposed," 490 U.S., at 447, 109 S.Ct. 1892, rather than, as *Kennedy* demanded, evaluating the "statute on its face" to determine whether it provided for what amounted to a criminal sanction.

522 U.S. at 101, 118 S.Ct. 488. The Court rejected both of these departures. *Id.* at 101–02, 118 S.Ct. 488. Rejection of the second approach is by itself fatal to Cardwell's argument. According to the *Hudson* Court, the multiple criminal punishment component of double jeopardy analysis looks only at the nature of the proceedings on their face, and not at what happens in a specific proceeding.

The test that *Hudson* endorses for determining whether punishment is criminal or civil for double-jeopardy purposes is contained in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *Kennedy* looked at seven factors, which are:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it apples is already a

---

Contrary to Cardwell's contention, however, the fact that the immediate suspension was dissolved proves nothing. This court merely concluded, after considering Cardwell's motion to reconsider, that the regulation counsel's petition for immediate suspension was deficient in failing to adequately allege any facts showing that Cardwell posed a significant threat of harm to clients or the administration of justice. There had been no hearing at that point, and hence no fact-finding by this court or by anyone else.

crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Hudson,* 522 U.S. at 99–100, 118 S.Ct. 488 (quoting *Kennedy,* 372 U.S. at 168–69, 83 S.Ct. 554). The Court emphasized that these factors are to be considered only in relation to the "statute on its face," and " 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100, 83 S.Ct. 554 (quoting *United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).

■■ The civil sanction involved in *Hudson*—occupational debarment and monetary penalties—prohibited the petitioners from participating further in the banking industry. *Id.* at 95, 118 S.Ct. 488. It derived from a statute enacted by Congress. *Id.* at 96, 118 S.Ct. 488. In contrast, as part of our constitutional and inherent powers, this court has exclusive jurisdiction over lawyers, and possesses the plenary authority to regulate and supervise the practice of law in Colorado. *People v. Varallo,* 913 P.2d 1, 3 (Colo.1996); *Colo. Supreme Court Grievance Comm. v. Dist. Court,* 850 P.2d 150, 152 (Colo.1993). It is therefore this court's intent that is relevant. And we have made it clear that the primary purpose of lawyer regulation proceedings is to protect the public, not to punish the offending lawyer. *See, e.g., Marmon,* 903 P.2d at 655; *People v. Martin,* 897 P.2d 802, 804 (Colo.1995).

■ Analysis of regulation proceedings under the *Kennedy* factors leads to the same conclusion that regulation proceedings and the sanctions imposed in them are not criminal in nature.

As to the first *Kennedy* factor, a suspension or disbarment from the practice of law is not an "affirmative disability or restraint" approaching "the infamous punishment of imprisonment." *See Hudson,* 522 U.S. at 104, 118 S.Ct. 488 (internal quotation marks omitted). Second, neither suspension nor disbarment has historically been regarded as punishment. Revocation of a privilege voluntarily granted has been regarded as free of a punitive criminal element. *See id.*

The third factor—whether scienter is required—is present. In the absence of a history of disciplinary violations or other very serious aggravating factors, the sanctions of suspension and disbarment typically require that the lawyer's state of mind be knowing or intentional. *Compare* ABA *Standards, supra,* 4.11 (knowingly converting client property disbarment); 4.12 (knowingly dealing improperly with client property—suspension); 4.41 (knowingly failing to perform services for a client resulting in serious or potentially serious injury—disbarment); 4.42 (knowingly failing to perform services for a client—suspension); 5.11 (committing serious criminal conduct involving dishonesty or any other intentional conduct involving dishonesty—disbarment); 5.12 (knowingly engaging in any other kind of criminal conduct that seriously adversely reflects on the lawyer's fitness to practice law—suspension) *with* 4.13 (negligently dealing with client property—public censure); 4.43 (negligently injuring a client by not acting with reasonable diligence—public censure); 5.13 (knowingly engaging in dishonest conduct that adversely reflects on fitness to practice law—public censure).

■ Fourth, although the suspension or disbarment of a lawyer may also have a deterrent effect on other lawyer misconduct, *People v. Young,* 732 P.2d 1208, 1210 (Colo. 1987), that is not the primary purpose that the sanction is imposed. Nor do we suspend or disbar a lawyer for retribution. *People v. Robbins,* 869 P.2d 517, 519 (Colo.1994).

Fifth, although Cardwell's conduct in this case violated criminal statutes, the majority of lawyer regulation cases do not involve conduct that may also be punished as crimes. The sixth *Kennedy* factor is whether there is a purpose other than punishment to which regulation proceedings may be put. Safeguarding the public from unscrupulous lawyers is such a purpose. Finally, in general, neither suspension nor disbarment is excessive in relation to this alternative purpose.

Only the third *Kennedy* factor—scienter—is present in regulation proceedings. By itself, however, this one factor will not convert

a disciplinary sanction into a criminal punishment. *See Hudson*, 522 U.S. at 105, 118 S.Ct. 488. There is therefore no proof, much less the "clearest proof," that lawyer regulation proceedings impose criminal punishment for purposes of the Double Jeopardy Clause. Therefore, the suspension imposed in this case does not constitute criminal punishment for double-jeopardy purposes.

### B. The New Hearing

■ Cardwell next asserts that it was inappropriate for this court to order a new hearing where the first board's factual findings were supported by substantial evidence. This misses the point of why we remanded the case for a new hearing. It may well be that, in the face of conflicting evidence, the board may reach its own factual conclusions, which, if supported by substantial evidence are binding on this court. *See People v. Quiat*, 979 P.2d 1029, 1038 (Colo.1999). The first hearing board's factual findings and conclusions may have been supported by substantial evidence, when taken singly and in the abstract. But the problem was that the findings conflicted with one another. They were inconsistent and we could not reconcile them. We had no alternative but to remand for new findings.

### C. Due Process

■ Cardwell also alleges that the second hearing board's inquiry into collateral estoppel (issue preclusion) principles after the close of the evidence violated due process. At the close of the evidence, the PDJ asked Cardwell whether collateral estoppel principles applied to bar him from asserting the defense that he did not intend to mislead the county court with his misrepresentations. Cardwell argues that if issue preclusion was to be applied, due process required that he be given the opportunity to brief the issue

and to present the full record of the underlying criminal convictions.

■ However, the PDJ and hearing board did not apply general principles of issue preclusion in their opinion and order. Instead, they concluded that Cardwell was precluded from arguing that his misrepresentations were merely negligent by his guilty pleas to perjury and to influencing a public servant, and by C.R.C.P. 251.20(a), which provides that proof that a lawyer has been convicted of a crime "shall be conclusive proof of the commission of that crime by the [lawyer]." In addition, Cardwell admitted, in response to the complainant's second amended complaint, that his conviction of the crimes conclusively proved that he had committed all of the elements of those crimes. Cardwell was convicted of second-degree perjury: "(1) A person commits perjury in the second degree if, other than in an official proceeding, *with an intent to mislead a public servant* in the performance of his duty, he makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law." § 18–8–503 (emphasis added). We perceive no violation of Cardwell's due-process rights.[8]

### III.

■ We are required to affirm the decision of the hearing board as to the proper sanction, unless: (1) it bears no relation to the misconduct; (2) is manifestly excessive; or (3) is otherwise unreasonable. C.R.C.P. 251.27(b). We noted above that we agreed with the hearing board that disbarment was the presumed sanction for Cardwell's conduct. By that standard, the suspension imposed by the hearing board is neither unreasonable nor excessive. Accordingly, we affirm the order of the hearing board imposing a three-year suspension with eighteen

8. Although there is absolutely no evidence in the record to support it, Cardwell raises the issue that he might have entered an *Alford* plea to one or both criminal charges. The Constitution does not require an express admission of factual guilt for a court to accept a plea of guilty. *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). If a defendant protests

his innocence, however, the trial judge should inquire into factual guilt. *Id.* at 38 n. 10, 91 S.Ct. 160. We have held that proof of a criminal conviction under C.R.C.P. 251.20 establishes that the lawyer actually committed the elements of the offense, even if the lawyer enters an *Alford* plea. *People v. Gritchen*, 908 P.2d 70, 71 n. 1 (Colo.1995).

months stayed. We remand the case to the PDJ to assess costs against Cardwell.