Jerry E. CARDWELL, Petitioner

v.

The PEOPLE of the State of Colorado, Respondent.

No. 06PDJ028.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Nov. 21, 2006.

On August 28–29, 2006, a Hearing Board composed of MARNA M. LAKE, WILLIAM R. GRAY, both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a reinstatement hearing pursuant to C.R.C.P. 251.18 and 251.29(d). Alexander R. Rothrock represented Jerry E. Cardwell ("Petitioner") and James C. Coyle represented the Office of Attorney Regulation Counsel ("the People").

### OPINION AND ORDER RE: RE-INSTATEMENT PURSUANT TO C.R.C.P. 251.29

#### I. *ISSUE*

An attorney seeking reinstatement under C.R.C.P. 251.29 must prove compliance with

---

1. *See In re Cardwell*, 50 P.3d 897 (Colo.2002).

all disciplinary orders, fitness to practice, and rehabilitation by clear and convincing evidence. The People stipulated that Petitioner complied with all applicable disciplinary orders and that he is professionally competent. Petitioner provided substantial evidence of a meaningful and sustained change in his character since the time of his original suspension. Should the Hearing Board reinstate Petitioner's license to practice law?

**DECISION OF HEARING BOARD: RE-INSTATEMENT GRANTED**

#### II. *PROCEDURAL HISTORY*

On July 24, 2002, the Colorado Supreme Court affirmed the findings of fact and order of discipline from a Hearing Board in case number 00PDJ074 and suspended Petitioner from the practice of law for a period of three years with eighteen months of the suspension stayed.[1] On August 2, 2004, the PDJ suspended Petitioner for a period of ninety days in case number 04PDJ015.

On April 11, 2006 Petitioner filed "Respondent's Verified Petition for Reinstatement." On April 24, 2006, the People filed an "Answer To Verified Petition For Reinstatement" and agreed to Petitioner's eligibility with regard to reinstatement, but took no position on the merits of the petition pending their investigation of the matters alleged therein. On August 22, 2006, Petitioner filed a "Verified Supplement to Petition for Reinstatement." The People did not file a response.

On August 22, 2006, the parties filed a joint exhibit list and the PDJ accepted and admitted stipulated exhibits 1–11 into evidence at the commencement of the reinstatement hearing. The PDJ also accepted and admitted a supplemental stipulation, a stipulated chronology of events, and a timeline of events as exhibits 12–14 during the hearing.

At the reinstatement hearing, the People stipulated that Petitioner had complied with all applicable disciplinary orders related to his suspension and that he is professionally competent.[2] Petitioner testified on his own

---

2. *See* Stipulated Exhibits 1, 5, 7, 8, 11 and 12.

behalf and presented six additional witnesses, both lay and professional, in support of his petition. The People did not present any witnesses and at the close of the case agreed that Petitioner should be reinstated with certain conditions.

## III. *FINDINGS OF FACT*

The Hearing Board finds the following facts by clear and convincing evidence.[3]

Petitioner has taken and subscribed the Oath of Admission, was admitted to the Bar of the State of Colorado on May 25, 1983, and is registered as an attorney upon the official records of the Colorado Supreme Court, Attorney Registration No. 12743. Petitioner is subject to the jurisdiction of the Colorado Supreme Court and the Office of the Presiding Disciplinary Judge in these proceedings.

### *Petitioner's First Suspension*

On June 24, 2002, the Colorado Supreme Court suspended Petitioner's license to practice law in the State of Colorado for three years, with eighteen months stayed.[4] The factual basis for Petitioner's first suspension involved his dishonesty in an oral colloquy with a judge and his submission of written documents filed on behalf of his client in Arapahoe County Court.

On February 5, 1996, Petitioner appeared with his client, James McHenry, in Jefferson County Court. On that date, Mr. McHenry pled guilty to DWAI and the court later sentenced him to probation with a referral for an alcohol evaluation.

On May 6, 1996, Petitioner appeared with Mr. McHenry in Arapahoe County Court on a second DUI charge. Petitioner negotiated a plea agreement with the deputy district attorney without informing him about the Jefferson County Court conviction. Petitioner and Mr. McHenry signed a plea agreement attesting that Mr. McHenry had "[n]o prior or pending alcohol related driving offenses in this or any state." Petitioner had advised Mr. McHenry about the mandatory

five-day jail sentence that would be imposed for a conviction of a second alcohol-related driving offense.[5] When he signed the document, Petitioner knew that Mr. McHenry had been previously charged with an unrelated DUI and had entered a guilty plea to DWAI in Jefferson County Court, but somehow "convinced" himself that Mr. McHenry had not been convicted of an alcohol offense in Jefferson County.

After Petitioner tendered the written plea agreement, Judge Ethan Feldman asked Petitioner and his client the following questions in open court before accepting the plea:

Court: Have you ever had an alcohol driving offense before?

Petitioner: No sir.

Court (to client): Okay, is that your representation?

Mr. McHenry: Yes sir.

Court: Okay, never ever, at any time, any place?

Mr. McHenry: No.

Based on these untruthful representations, Judge Feldman sentenced Mr. McHenry to twelve months of probation, with no jail time, as a first time offender.[6] In these reinstatement proceedings, Petitioner acknowledged that this statement to Judge Feldman was a lie.

On June 13, 1996, after discovering that Petitioner's client was previously convicted of an alcohol driving offense, Judge Feldman confronted Petitioner about his untruthful comments regarding his client's driving record. The matter was then reported to the People and Petitioner was ultimately suspended on order of the Colorado Supreme Court for three years, with eighteen months stayed. Petitioner also was eventually charged with six felonies and two misdemeanors.

On April 23, 1997, pursuant to a deferred sentencing plea agreement, Petitioner tendered a plea of guilty to attempting to influ-

---

3. *See* Stipulated Exhibit 13.

4. *See In re Cardwell*, 50 P.3d 897 (Colo.2002).

5. *See* C.R.S. 42-4-1301(9)(b)(II).

6. *See* C.R.S. § 42-4-1301(9)(b)(I) and *In re Cardwell*, 50 P.3d 897 (Colo.2002).

ence a public servant, a Class 4 felony,[7] and to perjury in the second degree, a Class 1 misdemeanor. Pursuant to the plea agreement, Petitioner received a four-year deferred judgment and sentence on the felony count. Petitioner satisfied all terms of probation, which included a $4,000.00 fine, ethics class attendance, 200 hours of community service, and the felony charge was dismissed.

### Petitioner's Second Suspension

On August 2, 2004, the PDJ suspended Respondent from the practice of law for ninety days, based upon a conditional admission of misconduct filed on July 20, 2004. The factual basis for the second suspension concerned Petitioner's representation of a client in two automobile accident cases.

Petitioner acknowledged that he represented a client in two accident cases and allowed the statute of limitations to lapse in one of these cases. Petitioner contacted his client in 2002 and asked her to pick up the active case file. When his client asked Petitioner what happened on the second accident case, he told her the case had been dismissed. In fact, Petitioner had filed the case in the wrong jurisdiction and it had been dismissed for failure to prosecute. By that time the statute of limitations had also lapsed.

### Petitioner's Testimony

Petitioner testified on his own behalf and described the following background leading to his practice of law in Colorado. He graduated from Drake University Law School in 1982, clerked for Judge Zita Weinshenk in the United States District Court for the District of Colorado, and later went into private practice with his father-in-law, George T. Ashen, in Denver. Petitioner practiced workers compensation and personal injury law and later started a business section of the firm. By the late 1980s, Petitioner became a partner in the firm. The law firm later dissolved and Petitioner started his own firm.

At his own firm, Petitioner primarily practiced business and transactional law while handling a few criminal matters. He typically used the criminal work as a training opportunity for the younger lawyers in his office. Petitioner only handled smaller criminal matters and maintained a policy of not accepting cases involving second-time offenders. He nevertheless continued to represent Mr. McHenry after his second arrest for DUI.

Petitioner testified in great detail with regard to his representation of Mr. McHenry. He also testified to the events that led to his discipline and admitted that he lied twice to Judge Feldman.

Petitioner worked for a number of different companies during his suspension. He initially worked for a friend and former client, Richard Hansen, who owned an Internet marketing firm for undeveloped land called U.S. Lots. Petitioner ran this company for approximately one year before accepting a new business opportunity in Oregon in January 2004. Petitioner also spent six to seven months as a car salesman for Kuni Lexus in the summer of 2005.[8]

Since April 2006, Petitioner has worked for a mergers and acquisitions firm as vice-president and operations manager. Petitioner has also maintained his competence in the law by working for George T. Ashen as a part-time law clerk the past fifteen months.

Petitioner testified to his significant financial difficulties in recent years.[9] He stated that these difficulties began in 2000–01 when he started losing attorneys and cases at his firm. Petitioner dipped into retirement and education accounts, as well as various lines of credit in attempt to pay salaries and financially stay afloat. He paid off approximately five hundred thousand dollars in outstanding debt, leaving approximately one hundred fifty to one hundred seventy-five thousand dollars in personal debt as of 2003. The total current amount of Petitioner's debts is well in excess of two hundred thousand dollars.[10]

---

7. *See* C.R.S. § 18–8–306.

8. *See* Stipulated Exhibit 2.

9. *See* Stipulated Exhibit 6.

10. *See* ¶¶ 13–14, Partial Stipulation of Facts filed August 22, 2006.

Petitioner has not filed bankruptcy as of the date of the reinstatement hearing. However, a number of friends and relatives have come to Petitioner's aid in recent years by loaning him funds. He has attempted to negotiate payment arrangements and consolidate debts with several of his creditors.

Petitioner testified that he has learned from his mistakes. He admitted that early on in his career, he was an "arrogant" attorney who felt he could solve any problem. Petitioner now can admit it when he does not know the answer to an issue and feels he would be much more open and candid. He also now realizes the importance of seeking advice from other attorneys and friends. Petitioner stated that the greatest thing he learned throughout this process is the value of his friends.

Petitioner's misconduct caused a "tremendous" strain on his family. However, he believes his religious faith is stronger now and he believes he is "more real." Petitioner testified that he enjoys helping people with their legal problems and that he has a great passion for the practice of law. If he is reinstated, Petitioner stated that he would ease back into the profession, and would ensure compliance with case deadlines through a new computer program designed to assist with scheduling.

### Additional Testimony in Support of Petition for Reinstatement

Douglas Coon, M.D., is a board-certified doctor of emergency medicine. He met Petitioner through a mutual friend in 2002. Petitioner initially helped Dr. Coon deal with the hostile takeover of his company. He testified to Petitioner's "cocky" and "brash" but highly effective manner in those matters. They remained in contact following the takeover and Dr. Coon later sought Petitioner's assistance in another business transaction in April 2004. Dr. Coon testified that Petitioner initially appeared "neutral" about his misconduct, but later opened up and accepted full responsibility for his actions. He believes Petitioner is an honest person who has learned his lesson from his past conduct.

Richard Hansen is a real estate redeveloper who operates an Internet marketing firm called U.S. Lots. He met Petitioner through a mutual friend in the mid 1990s. Petitioner performed legal work in past years and ran Mr. Hansen's company for a year after his suspension from the practice of law. Mr. Hansen testified that Petitioner had changed from a cocky and arrogant man to a remorseful person who could admit his mistakes. Mr. Hansen also testified that he would hire Petitioner to perform legal work in the future.

Richard Klamper is a real estate developer and appraiser. He met Petitioner in the early 1980s when they lived in the same subdivision. Mr. Klamper hired Petitioner to perform legal work for his various businesses. He also depicted Petitioner as cocky and "the type of lawyer everyone hated." However, Petitioner provided Mr. Klamper with effective legal services for his businesses over the years. He stated that Petitioner discussed his disciplinary troubles over time and eventually accepted full responsibility for his actions. Mr. Klamper said Petitioner became a more compassionate, believable, and humble person in recent years.

Joseph Murr is a Colorado commercial litigation attorney. He met Petitioner as opposing counsel in a real estate case thirteen years ago. Mr. Murr has observed Petitioner's recognition that he made a terrible mistake and a change in his overall conduct. He stated that Petitioner is the type of lawyer he would consider hiring at his own firm.

David Moss is an engineer who designs and sells large gas compressor systems. He met Petitioner seven or eight years ago and they attend the same church while their children attend the same school. Mr. Moss described Petitioner as initially "gregarious" but later accepting of responsibility for his conduct. Mr. Moss testified that he would refer people to Petitioner because he believes Petitioner is more down to earth, compassionate, caring, and trustworthy.

Gabrielle Cardwell is Petitioner's wife of over twenty-six years. Ms. Cardwell and Petitioner have two young children and they have lived in Castle Rock, Colorado for over twenty years. Ms. Cardwell described the experience of living through these disciplin-

ary proceedings. She testified to returning to work as a result of the difficult financial circumstances the family went through following Petitioner's suspension. Ms. Cardwell believes Petitioner has changed over the years from someone who used to have a big ego, to someone who is more humble. She believes Petitioner is very honest, is prepared to practice law again, and that he will be a better attorney today.

Gary S. Gutterman is a licensed psychiatrist. Petitioner underwent an independent medical evaluation ("IME") by Dr. Gutterman, M.D. on June 7, 2006.[11] Dr. Gutterman opined that Petitioner is capable of returning to the practice of law from a psychiatric perspective. Dr. Gutterman also recommended that Petitioner receive some psychotherapeutic follow-up on a monthly basis for approximately six months. He stated that there will probably be various stressors during the transition phase, and meeting with a therapist on a monthly basis during that initial period will allow Petitioner the opportunity to more effectively manage and master this transition and remain aware of his need to more objectively interact with clients.

## IV. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

The Hearing Board must first look to the rules applicable to the reinstatement process and then to case law, particularly Colorado Supreme Court case law, which provides considerable guidance in interpreting these rules. Pursuant to C.R.C.P. 251.29(b), an attorney subject to reinstatement proceedings must prove the following by clear and convincing evidence:

1. He has been rehabilitated;
2. He has complied with all applicable disciplinary orders and with all provisions of Chapter 20 of the Colorado Rules of Civil Procedure concerning attorney discipline; and
3. He is fit to practice law.

11. *See* Stipulated Exhibit 4.

12. While this case interpreted the previous rule, C.R.C.P. 241.22, it looks to the ABA factors for determining rehabilitation and provides valuable guidance in this area.

■ C.R.C.P. 251.29(c) sets forth the formal requirements for a petition for reinstatement and C.R.C.P. 251.29(d) requires the party seeking reinstatement to prove the averments in the petition by clear and convincing evidence. The People stipulated that Petitioner complied with all applicable disciplinary orders related to his suspension and that he is competent in his knowledge of the law. Therefore, the only issue before this Hearing Board is whether Petitioner proved by clear and convincing evidence that he has been rehabilitated and is otherwise fit to practice law as provided in C.R.C.P. 251.29(b).

■ The Colorado Supreme Court declared that in assessing rehabilitation we "must include the consideration of numerous factors bearing on the [attorney's] *state of mind and ability.*"[12] These issues include but *are not limited to:*

> . . . numerous factors bearing on the Petitioner's state of mind and ability, such as character, conduct since the imposition of the original discipline, professional competence, candor and sincerity, recommendations of other witnesses, present business pursuits of the Petitioner, the personal and community service aspects of the Petitioner's life, and the Petitioner's recognition of the seriousness of his previous misconduct.

*People v. Klein,* 756 P.2d 1013, 1016 (Colo. 1988); *see also Goff v. People,* 35 P.3d 487 (Colo.O.P.D.J.2000); and *Lockley v. People,* 96 P.3d 236 (Colo.O.P.D.J.2004).[13]

Petitioner engaged in serious misconduct when he lied to a district court judge. However, the Hearing Board finds that Petitioner has learned from this experience and believes he is a changed person. The Hearing Board therefore finds by clear and convincing evidence that Petitioner is now rehabilitated, has complied with all the applicable rules in the reinstatement, is otherwise fit to practice law, and should be reinstated to the practice of law.

13. The PDJ cites O.P.D.J. cases only for guidance and not as precedent.

The People argued that debt is a substantial issue in this case. The Hearing Board agrees that Petitioner faces significant financial hurdles as he returns to the practice of law. However, the Hearing Board also finds there was no order of restitution made in either case number 00PDJ074 or case number 04PDJ015; and the Colorado Attorneys' Fund for Client Protection was not required to make any reimbursements to any of Petitioner's clients.[14]

The Hearing Board finds Petitioner's rehabilitation is complete and he has demonstrated such rehabilitation by clear and convincing evidence. Therefore, the Hearing Board finds the conditions for reinstatement offered by the parties unnecessary for Petitioner's successful transition back into the practice of law.

The Hearing Board commends Petitioner for the zeal and passion for the practice of law he demonstrated in these proceedings, and encourages him to maintain the same enthusiasm and respect for the practice of law in the future.

## V. ORDER

It is therefore ORDERED:

1.  The Hearing Board **GRANTS** Petitioner's Verified Petition for Reinstatement. Petitioner Jerry E. Cardwell, Attorney Registration Number 12743, **SHALL** be reinstated to the practice of law effective immediately.

2.  Petitioner **SHALL** pay the costs of these proceedings; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order, and Petitioner may submit a response within ten (10) days thereafter.