**The PEOPLE of the State of Colorado, Complainant**

**v.**

**Stephen C. BACA, Respondent.**

**No. 15PDJ013.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Oct. 15, 2015.

A hearing board suspended Stephen C. Baca (Attorney Registration Number 36526) for one year and one day, with three months

served and the remainder stayed. After completing the three-month suspension, Baca will serve a three-year period of probation with conditions to include practice monitoring. Baca's suspension took effect on November 19, 2015.

While representing a client in a civil case, Baca provided incompetent representation, including by filing a complaint without asserting any claims for relief and by failing to follow the applicable rules of procedure. In a second case, Baca failed to advise an immigration client that his guilty plea in a criminal matter would affect his immigration status. Baca then misrepresented his client's immigration status to the court and failed to correct opposing counsel's misstatements of fact regarding his client's legal status.

Baca violated Colo. RPC 1.1 (a lawyer shall provide competent representation to a client); Colo. 1.4 (a lawyer shall reasonably communicate with the client); Colo. RPC 3.1 (a lawyer shall not assert a frivolous claim); Colo. RPC 3.3 (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal); Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Colo. RPC 8.4(d) (a lawyer shall not engage in conduct prejudicial to the administration of justice).

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

On August 18, 2015, a Hearing Board comprising E. Steven Ezell and John B. Wasserman, members of the bar, and William R. Lucero, the Presiding Disciplinary Judge ("the PDJ"), held a hearing pursuant to C.R.C.P. 251.18. Jacob M. Vos appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Stephen C. Baca ("Respondent") appeared with counsel, Christopher Grubbs. The Hearing Board now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

## I. SUMMARY

Respondent, who admitted all of the People's factual allegations and claims for relief,

disregarded duties he owed to his clients in two separate matters. In one of those matters, Respondent provided incompetent representation in a civil case, including by filing a complaint on his client's behalf without asserting any claims for relief. In a second case, Respondent failed to advise a client that his guilty plea in a criminal matter would affect his immigration status. Respondent then misrepresented his client's immigration status to the court and failed to correct opposing counsel's misstatements of fact regarding his client's legal status. Considering the totality of the circumstances, the Hearing Board concludes that Respondent should be suspended from the practice of law for one year and one day, with three months served and the remainder stayed subject to the successful completion of a three-year period of probation with conditions.

## II. PROCEDURAL HISTORY

The People filed a complaint on February 17, 2015, alleging seven claims of unprofessional conduct. Respondent answered the complaint pro se on March 31, 2015. Christopher Grubbs entered his appearance for Respondent on May 1, 2015. Respondent then filed an amended answer on May 12, 2015, in which he admitted all the allegations in the People's complaint with respect to Claims I–III (Colo. RPC 1.1, 3.1, and 8.4(d)). On May 18, 2015, the PDJ entered partial judgment on those three claims. Respondent filed a second amended answer on June 9, 2015, this time admitting all the allegations and rule violations forming the basis of Claims IV–VII (Colo. RPC 1.1, 1.4, 3.3, and 8.4(c)). The PDJ entered judgment on the remaining claims on June 15, 2015, and converted the trial scheduled for August 17–18, 2015, to a one-day hearing on the sanctions.

The People filed a motion in limine on August 7, 2015, seeking to exclude Respondent's exhibits and Brandon Marinoff's testimony because Respondent disclosed the exhibits and witness after the discovery cutoff date. The PDJ denied the People's motion, finding that Respondent's late disclosure of his exhibits was harmless, and permitted Marinoff to testify as to Respondent's char-

acter. On August 11, 2015, Respondent moved to continue the hearing because one of his witnesses was unavailable to testify, and because Respondent's counsel had an elective surgery scheduled the week before trial. The PDJ denied this motion, finding a lack of good cause for the continuance.

During the hearing on August 18, the Hearing Board heard testimony from Marleen Langfield, Judge Denis Hall, Bryon Large, Clifton Croan, Ashley Buss, and Respondent. The PDJ admitted stipulated exhibits S1–S16 and the People's exhibit 17. The Hearing Board also considered the parties' arguments concerning sanctions.

## III. FINDINGS OF FACT AND RULE VIOLATIONS

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on September 16, 2005, under attorney registration number 36526.[1] He is thus subject to the jurisdiction of the Hearing Board in these disciplinary proceedings.[2]

Respondent is a solo practitioner but office-shares with another attorney. He has primarily practiced immigration and criminal law for the past ten years.

### The Croan Matter

In December 2011, Respondent met with Ashley Buss, a fellow fraternity member and a software developer, to discuss a contract dispute Buss had with Clifton Croan, another member of the fraternity.[3] Buss had verbally agreed to create a software application for Croan's business.[4] In compensation, Buss was to receive fifty percent of any revenues generated by Croan's business from the software application.[5] Croan claimed that Buss had not fulfilled his obligations under the agreement to create a finished product.[6] Buss, on the other hand, contended that his product was viable and that he was never paid for his work.[7] No revenues were ever generated by the software's use in Croan's business.[8]

In support of his claims, Buss showed Respondent computer codes that he had created. Respondent recognized that he was not computer "savvy" enough to know what he was looking at and depended entirely on Buss's representations as to whether the software application was viable.[9] Respondent did not conduct his own independent investigation of the factual assertions, nor did he consult a computer expert to review Buss's software application.[10] Respondent agreed to represent Buss, even though his practice focused primarily on criminal and immigration matters.[11] Respondent had handled only one civil matter before agreeing to take Buss's case.[12]

Despite his inexperience with civil litigation, Respondent filed a complaint in Denver District Court on Buss's behalf in January 2012.[13] The complaint lacked specific claims for relief, however, and instead contained only vague allegations.[14] Respondent might have been able to assert a claim for unjust enrichment, but he did not do so.[15] In the complaint, Respondent alleged that Croan failed to pay Buss for his substantial work in

1. Compl. ¶1; Answer ¶1.

2. See C.R.C.P. 251.1(b). Respondent's registered business address is 12207 Pecos Street, Number 700, Westminster, Colorado 80234.

3. Compl. ¶3; Am. Answer ¶9.

4. Compl. ¶4; Am. Answer ¶9.

5. Compl. ¶5; Am. Answer ¶9.

6. Compl. ¶6; Am. Answer ¶9.

7. Compl. ¶7; Am. Answer ¶9.

8. Compl. ¶9; Am. Answer ¶9.

9. Compl. ¶21; Am. Answer ¶9.

10. Compl. ¶¶20–22; Am. Answer ¶9.

11. Compl. ¶10; Am. Answer ¶9.

12. Compl. ¶11; Am. Answer ¶9.

13. Compl. ¶12; Am. Answer ¶9. The case was styled *The Rastor Shop, LLC v. Enigami Systems, Inc. & Owner Clifford Croan,* case number 2012CV234.

14. Ex. S10; Compl. ¶23; Am. Answer ¶9.

15. Compl. ¶25; Am. Answer ¶9.

completing the software application, even though Buss and Croan's agreement provided for a fifty-fifty split of revenue, of which there was none.[16] Respondent sought over $200,000.00 in damages in order to compensate Buss for his work.[17]

This lawsuit was governed by the Colorado Civil Access Pilot Project ("CAPP") rules.[18] Respondent was not familiar with these rules.[19] During the course of representing Buss, Respondent repeatedly failed to comply with the CAPP rules.[20] For instance, on two occasions he did not file the required cover sheet.[21] He also did not comply with CAPP Rule 2.2, which requires a plaintiff to plead all known material facts, nor did he file the required initial disclosures.[22] Opposing counsel filed a motion to dismiss Buss's complaint and for attorney's fees and sanctions based upon Respondent's violations of the CAPP rules.[23]

Eventually, Buss terminated Respondent as his counsel.[24] Buss's new lawyer voluntarily dismissed the complaint.[25] The court held two hearings on Croan's requests for fees and costs.[26] The court found that the complaint filed by Respondent was groundless and frivolous.[27] The court also determined that Respondent had failed to conduct independent research into the validity of the claims and that Respondent and Buss's representations about the product's viability were not credible.[28] The court assessed fees and costs jointly and severally against Respondent and Buss in excess of $91,000.00.[29]

After this judgment was entered, both Respondent and Buss filed for bankruptcy.[30] Croan received a non-dischargeable judgment against Buss in those proceedings. Respondent agreed to pay his creditors, including Croan, all of what he owed them over a five-year period. Respondent promised Buss that he would pay Croan the $91,000.00 court judgment. Respondent testified that he allocates almost eighty percent of his monthly income toward paying Croan and his creditors. Croan's attorney's fees in the bankruptcy proceeding were approximately $15,000.00, and Respondent has paid these fees.

Respondent filed an appeal of the district court's judgment of fees and costs.[31] The appeal was affirmed by the Colorado Court of Appeals, and Croan was awarded his attorney's fees for the appeal.[32] Respondent has paid Croan's appellate attorney $12,000.00 for his fees.

Through his representation of Buss, Respondent agreed that he violated Colo. RPC 1.1 (a lawyer shall provide competent representation to a client); Colo. RPC 3.1 (a lawyer shall not bring or defend a proceeding or assert an issue therein unless there is a basis in law and fact for doing so that is not frivolous); and Colo. RPC 8.4(d) (a lawyer shall not engage in conduct that prejudices the administration of justice).[33]

### The Corpus–Lopez Matter

In February 1996, Jose Corpus–Lopez entered the United States without undergoing

**16.** Compl. ¶ 20; Am. Answer ¶ 9.

**17.** Ex. S10.

**18.** Compl. ¶ 13; Am. Answer ¶ 9.

**19.** Compl. ¶ 14; Am. Answer ¶ 9.

**20.** Compl. ¶ 15; Am. Answer ¶ 9.

**21.** Compl. ¶ 16; Am. Answer ¶ 9.

**22.** Compl. ¶ 18; Am. Answer ¶ 9.

**23.** Compl. ¶ 19; Am. Answer ¶ 9.

**24.** Compl. ¶ 29; Am. Answer ¶ 9.

**25.** Compl. ¶ 30; Am. Answer ¶ 9.

**26.** Compl. ¶ 30; Am. Answer ¶ 9.

**27.** Compl. ¶ 31; Am. Answer ¶ 9; *see* Ex. S11.

**28.** Compl. ¶ 31; Am. Answer ¶ 9; *see* Ex. S11.

**29.** Compl. ¶ 32; Am. Answer ¶ 9; *see* Exs. S11–S12.

**30.** Compl. ¶ 33; Am. Answer ¶ 9.

**31.** Compl. ¶ 34; Am. Answer ¶ 9; *see* Exs. S13–S14.

**32.** *See* Ex. S15 at 16.

**33.** Am. Answer ¶¶ 5–10.

an inspection.[34] He left briefly in February 2004 but soon returned, again without inspection.[35] On May 5, 2010, Corpus–Lopez was apprehended by Immigration and Customs Enforcement ("ICE") and placed in removal proceedings.[36]

Corpus–Lopez retained Respondent on June 25, 2010, to represent him in the removal action.[37] Around July 20, 2011, Corpus–Lopez hired Respondent to assist him with a criminal case in which he was charged with multiple felony forgery counts and two misdemeanor perjury counts arising from his long-standing use of another person's social security number.[38] Also on July 20, Respondent filed an application for cancellation of removal with the immigration court on behalf of Corpus–Lopez.[39]

Respondent testified that he thought it was best for Corpus–Lopez to plead guilty to one of the misdemeanor perjury counts so that the felony charges might be dismissed in the criminal case. He opined that had Corpus–Lopez been convicted of multiple felonies he would have had no chance of returning to the United States. Respondent's strategy was for his client to plead guilty to the misdemeanor, return to Mexico, and then have his United States spouse file a petition for him to return to the United States.

On November 21, 2011, Respondent appeared with Corpus–Lopez before Judge Denis Hall for a sentencing hearing in the criminal case.[40] The removal proceedings were still pending against Corpus–Lopez.[41]

Marleen Langfield was the district attorney assigned to the criminal case.[42] Langfield testified at the disciplinary hearing that after receiving the case, she reviewed the notes in the file.[43] The notes indicated that Corpus–Lopez had obtained citizenship after his criminal conduct and was a legal resident.[44] She believed this information appeared in the file because a colleague had interviewed Respondent. This information was false.[45] Langfield explained that Corpus–Lopez's citizenship was considered by her office to be a mitigating factor in deciding whether he was eligible for probation. At the time, Langfield said the district court's position was that a defendant had to be law abiding in order to be eligible for probation. Illegal presence in the United States would thus make a defendant ineligible for probation.

During the hearing on November 21, 2011, Langfield informed the court that Corpus–Lopez wanted to plead guilty to one misdemeanor perjury charge in exchange for probation.[46] Respondent had advised Corpus–Lopez to enter this plea, telling him that this plea would not affect his immigration status.[47] Also at the hearing, Langfield explained the facts of the case to the court as she understood them.[48] She stated that Corpus–Lopez "became a citizen" after his criminal acts.[49] Respondent knew that Langfield's statement was false.[50] As his attorney, Respondent was aware that Corpus–Lopez was not a U.S. citizen.[51] He made no effort to correct her statement.[52] Respon-

34. Compl. ¶ 46; Second Am. Answer ¶ 6.

35. Compl. ¶ 47; Second Am. Answer ¶ 6.

36. Compl. ¶ 48; Second Am. Answer ¶ 6.

37. Compl. ¶ 49; Second Am. Answer ¶ 6; see Ex. S9 at 5–7.

38. Compl. ¶ 50; Second Am. Answer ¶ 6.

39. Compl. ¶ 51; Second Am. Answer ¶ 6.

40. Compl. ¶ 52; Second Am. Answer ¶ 6.

41. Compl. ¶ 53; Second Am. Answer ¶ 6.

42. Compl. ¶ 54; Second Am. Answer ¶ 6.

43. See Ex. S1.

44. See Ex. S1 at 2–3.

45. See Compl. ¶ 58; Second Am. Answer ¶ 6.

46. Compl. ¶ 54; Second Am. Answer ¶ 6; Ex. 17 at 2.

47. Compl. ¶ 55; Second Am. Answer ¶ 6.

48. Compl. ¶ 57; Second Am. Answer ¶ 6; Ex 17 at 6:23–7:7.

49. Compl. ¶ 57; Second Am. Answer ¶ 6; Ex. 17 at 7:1–3.

50. Compl. ¶¶ 60, 91; Second Am. Answer ¶ 6.

51. Compl. ¶ 60; Second Am. Answer ¶ 6.

52. Compl. ¶ 61; Second Am. Answer ¶ 6.

dent told the court that Corpus–Lopez was "legally here" and had "permission to work here." [53] He then asked the court to consider probation.[54] Langfield testified at the disciplinary hearing that had she known Corpus–Lopez was not a citizen, she would not have offered probation as an alternative to sentencing.

When the court asked Respondent whether Corpus–Lopez was a legal resident or citizen, Respondent replied that he was "a resident." [55] Respondent knew this statement was false.[56] Respondent was also asked by the court whether the guilty plea would cause his client's immigration status to change, and Respondent replied, "Not to my knowledge, no." [57]

The court accepted Corpus–Lopez's guilty plea and agreed to dismiss the remaining charges.[58] Judge Hall made the following comments during sentencing:

> Well, this seems to be a manner [sic] in which probation is clearly appropriate. The defendant did not-doesn't have any prior record other than traffic and no one has been harmed by his use of the false Social Security number, and of course, it makes a huge difference to me that he's taking care of business enough to obtain legal status in this country, so I think this is clearly a probation case.[59]

Respondent did not respond to the court's comments, nor did he correct the court's misstatement of facts.[60] Judge Hall reiterated that "it makes a huge difference" that Corpus–Lopez had "obtained legal status." [61] Again, Respondent did not correct the

court.[62] Based on Respondent's representation, and unaware of Corpus–Lopez's true status, Judge Hall sentenced Corpus–Lopez to probation, even though he was not eligible. At the hearing, Respondent testified that he did not intentionally mislead the court but instead was merely "sloppy," as the courtroom was "hustling and bustling."

Judge Hall testified at the disciplinary hearing that Corpus–Lopez's legal status was very important to him because it is a mitigating factor to be considered during sentencing. He stated that had he known of Corpus–Lopez's true immigration status, he would not have placed him on probation. Judge Hall further testified that he was unable to accurately advise Corpus–Lopez of the consequences of his plea, believing him to be legally within the United States. He explained that he must rely upon attorneys' representations as to their clients' status during sentencing because he cannot conduct an independent investigation.

A perjury charge is considered by immigration courts to be a crime of moral turpitude.[63] As a result, the advice Respondent gave to Corpus–Lopez—to plead guilty to this charge—adversely affected his immigration case.[64] On May 23, 2013, Corpus–Lopez appeared in immigration court for a hearing on his cancellation of removal application.[65] Just beforehand, Respondent informed Corpus–Lopez that he was no longer eligible for cancellation of removal because of his conviction for a crime of moral turpitude.[66] Instead, he told Corpus–Lopez to request a voluntary departure from the United States rather than leaving under a removal order.[67]

53. Compl. ¶ 63; Second Am. Answer ¶ 6; Ex. 17 at 10:2–9.

54. Compl. ¶ 63; Second Am. Answer ¶ 6; Ex. 17 at 10:2–9.

55. Compl. ¶ 64; Second Am. Answer ¶ 6; Ex. 17 at 11:3–7.

56. Compl. ¶¶ 87–88; Second Am. Answer ¶ 6.

57. Compl. ¶ 65; Second Am. Answer ¶ 6; Ex. 17 at 11:8–10.

58. Compl. ¶ 62; Second Am. Answer ¶ 6.

59. Compl. ¶ 66; Second Am. Answer ¶ 6.

60. Compl. ¶ 67; Second Am. Answer ¶ 6.

61. Compl. ¶ 68; Second Am. Answer ¶ 6; Ex. 17 at 11–19.

62. Compl. ¶ 70; Second Am. Answer ¶ 6.

63. Compl. ¶ 71; Second Am. Answer ¶ 6.

64. Compl. ¶ 73; Second Am. Answer ¶ 6.

65. Compl. ¶ 76; Second Am. Answer ¶ 6.

66. Compl. ¶ 78; Second Am. Answer ¶ 6.

67. Compl. ¶ 78; Second Am. Answer ¶ 6.

Thereafter, Corpus–Lopez retained attorney Bryon Large. Large testified at the hearing that when he first met with Corpus–Lopez, he had very few options to remain in the United States and, in fact, had been ordered to leave the country within 120 days. Large stated that he reviewed Corpus–Lopez's file and concluded that ICE was deporting him because of his guilty plea in his criminal case. He explained that Corpus–Lopez's plea was particularly damaging to his immigration status because courts view crimes of moral turpitude as offensive to society. These crimes, according to Large, carry significant immigration consequences and are not subject to much prosecutorial discretion.[68] Large opined that Corpus–Lopez's chances of cancelling the removal action would have been dramatically greater with convictions for felony forgery, which is not a crime of moral turpitude, as opposed to this particular misdemeanor conviction.

Respondent admitted that his conduct in the Corpus–Lopez matter violated Colo. RPC 1.1; Colo. RPC 1.4(a) (a lawyer shall reasonably communicate with the client); and Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).[69]

## IV. *SANCTIONS*

■ The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the determination of sanctions for lawyer misconduct.[70] In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

**68.** *See* Ex. S4 at 4.

**69.** Second Am. Answer ¶¶ 5–7.

**70.** *See In re Roose*, 69 P.3d 43, 46–47 (Colo. 2003).

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* In the Croan matter, Respondent neglected the duties he owed as a professional to the legal system and to his client by providing incompetent representation, disregarding the CAPP rules, and prejudicing the administration of justice. Respondent violated his duty to competently represent Corpus–Lopez, including the duty to adequately advise him about the consequences of his plea agreement. He did not fulfill his duty of candor to the legal system when he knowingly made misrepresentations to the district court about Corpus–Lopez's legal status and when he failed to correct the misstatements of the district attorney and the court.

*Mental State:* The admitted allegations of the People's complaint establish that Respondent acted knowingly when making misrepresentations to the court in the Corpus–Lopez matter.[71] Likewise, he acted with conscious awareness when he provided Corpus–Lopez with incompetent representation and failed to inform him how his plea would affect his immigration status. We find that even though Respondent may not have intended to violate his ethical duties, he was consciously aware of the nature and attendant circumstances of his misconduct.

Respondent also knowingly committed misconduct in the Croan matter. He knew that he lacked civil litigation experience yet agreed to represent Buss in his civil case. This resulted in his filing of a frivolous complaint, which set forth no claims for relief, and his failure to abide by the CAPP rules, causing prejudice to the administration of justice.

*Injury:* Respondent's misconduct caused actual injury to Corpus–Lopez, Buss, Croan, and the legal system. First, Respondent's advice to Corpus–Lopez to plead guilty to a crime of moral turpitude foreclosed Corpus–Lopez's chances of cancelling his removal action and remaining in the United States.

**71.** *See* Compl. ¶¶ 88, 91; Second Am. Answer ¶ 6 (conceding knowing violations of Colo. RPC 3.3(a)(1) and 8.4(c)).

Ultimately, Corpus–Lopez was deported to Mexico and permanently barred from reentering this country. Judge Hall testified that Respondent's misrepresentations and failures to correct the record harmed the legal system by preventing him from advising Corpus–Lopez about the consequences of his plea and causing him to place Corpus–Lopez on probation when he was ineligible. In a broader sense, any time a lawyer is dishonest with a court it causes harm to the public's perception of attorneys and tarnishes the legal system.[72]

Respondent's incompetence caused Buss actual harm because he lost a claim for unjust enrichment. Respondent also seriously injured Croan both emotionally and financially. Croan testified how shocked and frightened both he and his wife were when they received Buss's complaint. Croan estimated that he spent approximately $200,000.00 in attorney's fees defending the matter, which lasted more than two years from the filing of the complaint through the appeal. Croan had to borrow money from his friends to pay his attorney's fees. Not only was the litigation costly, but all of his free time was spent working on the case. He described the case as "the most important thing" in his life during that period. Before the litigation, Croan believed he would be able to retire, but now he thinks this opportunity is lost. Respondent's appeal and bankruptcy caused Croan to accrue significant additional attorney's fees. Respondent's conduct in this case also injured the legal system. His filing of a frivolous lawsuit and his failure to abide by court deadlines resulted in the unnecessary expenditure of court resources to resolve the matter.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Here, the presumptive sanction of suspension is dictated by three ABA *Standards*. First, ABA *Standard* 4.52 calls for suspension when a lawyer knowing engages in an area of practice in which the lawyer is not competent and causes injury or potential injury to a client. Second, ABA *Standard* 6.12

states that suspension is typically warranted when a lawyer knowingly engages in conduct that violates duties the lawyer owes as a professional, thereby harming a client, the public, or the legal system. Third, suspension is also the presumptive sanction under ABA *Standard* 6.22 when a lawyer knowingly violates a court order or rule and causes injury or potential injury to a client, or interference or potential interference with a legal proceeding.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

■ Aggravating factors are considerations that may justify an increase in the presumptive discipline to be imposed, while mitigating factors may warrant a reduction in the severity of the sanction.[73] The Hearing Board considers evidence of the following circumstances in deciding the appropriate sanction, and we conclude that three aggravating and four mitigating factors apply.

*Dishonest or Selfish Motive—9.22(b):* We find that Respondent acted with a dishonest motive in the Corpus–Lopez case when he made misrepresentations to the court as to Corpus–Lopez's immigration status. He acted dishonestly when he failed to correct misstatements made by the district attorney and the court indicating that Corpus–Lopez was a legal resident of the United States. He had multiple opportunities to correct the record, yet he chose not to do so. We thus choose to apply substantial weight to this factor in aggravation.

*A Pattern of Misconduct—9.22(c):* The People seek imposition of this factor in aggravation, arguing that Respondent repeatedly failed to comply with the CAPP rules in the Croan case and repeatedly misled the court in the Corpus–Lopez matter. However, we choose not to apply this aggravating factor here. Although Respondent failed on multiple occasions to follow the CAPP rules in the Croan case, his actions reflect a continued misunderstanding of the rules in the same case rather than a pattern

---

**72.** *People v. Pautler*, 47 P.3d 1175, 1179 (Colo. 2002).

**73.** *See* ABA *Standards* 9.21 & 9.31.

of misconduct.[74] Likewise, in the Corpus–Lopez representation, Respondent's misconduct was confined to one hearing and thus was not reflective of a repeated pattern of dishonesty.

*Multiple Offenses—9.22(d):* In two separate matters, Respondent engaged in multiple types of misconduct, including incompetence, filing a frivolous lawsuit, and dishonesty. We assign this aggravator significant weight in our sanctions analysis.

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* We find that although Respondent was remorseful for his actions in the Croan case, and he agreed that his conduct in the Corpus–Lopez case was wrong, he did not exhibit any true remorse for the faulty advice he gave to Corpus–Lopez or for the misrepresentations he made to the court. Rather, he asserted that Corpus–Lopez would have been deported whether or not he had advised him to plead guilty to a crime of moral turpitude. His testimony also suggested that he did not understand the gravity of his misrepresentations at the sentencing hearing because he believes the probation department should have realized Corpus–Lopez was not a legal resident of the United States and sent him back to the court for a prison sentence. We are concerned, based upon Respondent's testimony, that he does not truly appreciate the seriousness of his misconduct in the Corpus–Lopez matter, and we apply this factor in aggravation.

*Substantial Experience in the Practice of Law—9.22(i):* The People ask that the Hearing Board weigh this factor in aggravation, but we decline to do so. Respondent was admitted to the Colorado bar in September 2005, and at the time of his misconduct he did not have substantial experience in the

practice of law. His misconduct in the Corpus–Lopez matter occurred in 2011, just six years after he received his law license.[75] Likewise, Respondent had been licensed less than seven years when he filed the complaint on behalf of Buss in January 2012.

*Absence of a Prior Disciplinary Record—9.32(a):* Respondent has been licensed to practice law since 2005 with no instances of discipline. We deem this a factor in mitigation.

*Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct—9.32(d):* We find that Respondent has made significant efforts to repay Croan so as to rectify the consequences of his misconduct. The judgment of over $90,000.00 in attorney's fees in the Croan matter was awarded jointly and severally against Respondent and Buss. Respondent has agreed, however, to assume the entire responsibility for this judgment. In his bankruptcy proceeding, Respondent arranged a fully funded plan, requiring him to pay off his debt to Croan within five years. Respondent has also paid Croan's attorney's fees for the bankruptcy matter—approximately $15,000.00—and for the appeal—around $12,000.00. Testimony at the hearing indicated that Respondent has diligently made payments under the plan, and he is adamant about continuing to meet his obligation. Buss stated that Respondent has acted honorably throughout this process, and he is "eternally thankful" to Respondent for paying the judgment. We find that Respondent's actions demonstrate a good faith effort to make restitution to Croan and thus we choose to apply great weight to this factor in mitigation.[76]

*Full and Free Disclosure to Disciplinary Board or Cooperative Attitude Toward Pro-*

---

74. *In re Roose,* 69 P.3d 43, 49 (Colo.2003) (apparently giving no weight to the aggravating factors of a pattern of misconduct or multiple offenses where an attorney's misconduct "actually involved only two separate acts, arising from the same lack of understanding, and the same misguided perception of zealous advocacy, in the same case").

75. *See People v. Rolfe,* 962 P.2d 981, 983 (Colo. 1998) (finding that ten years in practice qualifies as "substantial experience in the practice of law"); *People v. Stauffer,* 858 P.2d 694, 696

(Colo.1993) (suggesting that about eight years of practice qualifies as "substantial experience in the practice of law").

76. *In re Fischer,* 89 P.3d 817, 821 (Colo.2004) (ruling it the "better policy to allow a good faith effort to make restitution to be considered in mitigation in order both to encourage lawyers to reduce the injuries they have caused and help ensure recognition of the wrongfulness of their conduct").

*ceedings—9.32(e):* We conclude that Respondent has cooperated in these proceedings and has made a full and free disclosure to the Hearing Board about the facts surrounding his misconduct. At the hearing, he testified that he wanted to take full responsibility for his actions and that he admitted the allegations in the People's complaint because he believed he had made mistakes in the Croan case, including missing deadlines and failing to follow the rules. Respondent was forthcoming about his lack of civil experience, calling his knowledge of civil law "inadequate." He did not dispute the findings of the district court in the Croan matter and acknowledged that the district court's findings were fair and accurate. We therefore choose to heavily weigh this factor in mitigation.

*Inexperience in the Practice of Law—9.32(f):* We decline to give Respondent credit for his inexperience in the practice of law. Although he had been licensed less than seven years at the time of his misconduct, his practice focused almost entirely on immigration and criminal law, and he should have been well-versed in this area of law. Moreover, any inexperience does not mitigate his dishonest conduct.[77] Finally, even though Respondent had little experience with civil matters, even the most inexperienced attorney should know to follow the applicable rules of procedure.

*Imposition of Other Penalties or Sanctions—9.32(k):* We choose to give Respondent substantial credit in mitigation for the judgment entered against him by the district court and the award of attorney's fees entered by the court of appeals.

### Analysis Under ABA *Standards* and Case Law

■ The Hearing Board is mindful of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[78] since "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[79] Though prior cases are helpful by way of analogy, the Hearing Board is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

The People ask that we impose a suspension ranging from six months to one year and one day, or even disbarment, for Respondent's misconduct. They cite cases that have imposed both short and substantial periods of suspension for similar misconduct. For instance, a three-year suspension was imposed in *People v. Cardwell*, where the attorney knowingly misrepresented to the district court a material fact in the prosecution of his client's charge of driving under the influence.[80] Even though his misrepresentations caused no harm to his client, they inflicted significant injury upon the legal system.[81] As a result of his misrepresentations, Cardwell received a criminal sentence, including a deferred judgment and a four-year sentence on a felony count.[82] Disbarment was the presumptive sanction, but upon consideration of the eight mitigating factors, particularly the severe penalties Cardwell suffered in the criminal justice system, the Colorado Supreme Court concluded that a substantial suspension was more apt than disbarment.[83]

Likewise, in *People v. Roose*, an attorney was suspended for one year and one day for disobeying the district court's order to re-

---

77. *In re Cleland*, 2 P.3d at 705 ("[I]nexperience does not go far in our view to excuse or to mitigate dishonesty, misrepresentation, or misappropriation. Little experience in the practice of law is necessary to appreciate such actual wrongdoing.").

78. *See In re Attorney F.*, 285 P.3d 322, 327 (Colo. 2012); *In re Fischer*, 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

79. *In re Attorney F.*, 285 P.3d at 327 (quoting *People v. Rosen*, 198 P.3d 116, 121 (Colo.2008)).

80. 50 P.3d 897, 905–06 (Colo.2002).

81. *Id.* at 902.

82. *Id.* at 900.

83. *Id.* at 902.

main in the courtroom and for making several statements in a notice of appeal that she knew to be false.[84] There, because Roose had not intended to obtain a benefit through her disobedience and deceit, and even though her actions caused an adverse effect on the legal proceeding, the Colorado Supreme Court determined that a suspension was the appropriate sanction under ABA *Standards* 6.12 and 6.22.[85] Her failure to appreciate the seriousness of her misconduct and to acknowledge the hearing board's jurisdiction over her, however, merited a substantial suspension of one year and one day.[86]

In *People v. Porter*, an attorney was suspended for forty-five days for recklessly making misrepresentations to a trial court and a disciplinary investigator regarding his client's certificate of review in a professional liability case.[87] His conduct caused his client to lose his cause of action.[88] The parties stipulated to suspension as the presumptive sanction and applied three mitigating factors and no aggravating factors to arrive at a short served suspension.[89]

An independent review of relevant case law shows that in some cases even public censure may be appropriate for the type of misconduct at issue here. For instance, an attorney was publicly censured in *People v. Rolfe* for making knowing misrepresentations to a court in a verified motion to restrict parenting time and during a hearing on the motion, and for withholding material information from the court during the same hearing.[90] Of importance to the Colorado

Supreme Court was the presence of four mitigating factors, compared with two factors in aggravation, including remorse and supportive testimony from the judge and the caseworker in the underlying case that the attorney had always been "open, honest, and competent, and that his conduct in this case did not conform to his usual behavior." [91]

Here, we find Respondent's misconduct more akin to the circumstances present in *Cardwell* and *Roose* than those in *Porter* and *Rolfe*—in particular, his knowing lack of candor to the court and his lack of character evidence—and are confident that a significant suspension is warranted. Considering the presumptive sanction, the varying types of misconduct, and the injury caused, as well as the substantial mitigating circumstances and dispositions in similar cases, we exercise our discretion to find that a one-year-and-one-day suspension is the appropriate sanction, mindful that "[l]awyers serve our system of justice, and if lawyers are dishonest, then there is a perception that the legal system, too, must be dishonest." [92] We require only three months served, however, in recognition of Respondent's laudable efforts to make restitution, his lack of disciplinary history, and his full and free disclosure to the Hearing Board. The remainder of Respondent's suspension should be stayed upon a three-year period of probation, with conditions. A suspension of this length will protect the public under the circumstances and is congruous with the Colorado Supreme Court's stated stance of strongly disapprov-

84. 69 P.3d at 45.

85. *Id.* at 49.

86. *Id.; see also People v. Kolbjornsen*, 917 P.2d 277, 279 (Colo.1996) (suspending an attorney for one year and one day for falsely denying at his trial that he had been driving without insurance and for falsifying a copy of an insurance card).

87. 980 P.2d 536, 538 (Colo.1999).

88. *Id.*

89. *Id.*

90. 962 P.2d at 982.

91. *Id.; see also People v. Small*, 962 P.2d 258, 260–61 (Colo.1998) (publicly censuring an attorney for knowingly giving false testimony where the testimony did not go to a dispositive and material fact and where mitigating factors outweighed aggravators); *People v. Bertagnolli*, 861 P.2d 717, 721 (Colo.1993) (publicly censuring an attorney for his failure to correct a known error in the testimony of one of his witnesses).

92. *Pautler*, 47 P.3d at 1179; *see also* ABA *Standards* § II at 7 (recommending that in cases involving multiple types of attorney misconduct, the ultimate sanction should at least be consistent with the sanction for the most serious disciplinary violation and "generally should be greater than the sanction for the most serious misconduct").

ing of lawyers' dishonest conduct.[93]

## V. CONCLUSION

Respondent ignored the duties he owed to the legal profession and to his clients to provide competent representation in both matters. As a result, the court in the Croan matter expended unnecessary resources to dispose of a frivolous complaint, and Corpus–Lopez was foreclosed from contesting his removal proceedings. Most egregious, however, Respondent deceived the court in the Corpus–Lopez matter. Lawyers' honesty forms the backbone of the legal system, and Respondent's deceitful misconduct cast a pall over the legal profession, warranting a one-year-and-one-day suspension, with three months served and the remainder stayed subject to a three-year period of probation with the conditions outlined below.

## VI. ORDER

The Hearing Board therefore **ORDERS:**

1. **STEPHEN C. BACA,** attorney registration number **36526,** is **SUSPENDED FOR ONE YEAR AND ONE DAY, WITH THREE MONTHS SERVED AND THE REMAINDER STAYED UPON THE SUCCESSFUL COMPLETION OF A THREE-YEAR PERIOD OF PROBATION.** The **SUSPENSION SHALL** take effect only upon issuance of an "Order and Notice of Suspension." [94]

2. Within fourteen days after the effective date of the suspension, Respondent **SHALL** comply with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the PDJ setting forth pending matters and attesting, inter alia, to notification of clients and of other jurisdictions where the attorney is licensed.

3. Should Respondent wish to resume the practice of law, he will be required to submit to the People, no more than twenty-eight days prior to the expira-

tion of the period of suspension, an affidavit complying with C.R.C.P. 2151.29(b).

4. Respondent **SHALL** comply with the following conditions of probation:

   a. During the first two years of his probation, Respondent **SHALL** consult quarterly with a practice monitor selected jointly by the People and Respondent. Each monitoring session must include reviews of Respondent's client files, selected at random. Respondent must provide a copy of this opinion to the monitor and execute an authorization for release of his information to the People. The monitor must notify the People if Respondent fails to fully participate in the required monitoring. The monitor must submit regular reports to the People during the monitoring period. Respondent is responsible for bearing all costs of complying with this condition of probation.

   b. Respondent **SHALL** attend and successfully pass the one-day ethics school sponsored by the People within one year of the date of this order. Respondent **SHALL** register and pay for the costs of ethics school within thirty-five days of the date of this order. Respondent will receive continuing legal education credits for his attendance at this ethics school. He may obtain the registration form for the ethics school online at *www.colorado supremecourt.com.*

   c. Respondent **SHALL** continue to make timely payments to Croan pursuant to the bankruptcy court's order and the payment plan to which Respondent agreed.

   d. Respondent **SHALL** not commit further violations of the Colorado Rules of Professional Conduct.

---

93. *Pautler,* 47 P.3d at 1179.

94. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

5. No more than twenty-eight days and no less than fourteen days prior to the expiration of the period of probation, Respondent **SHALL** file an affidavit with the People stating that he has complied with all terms of probation and shall file with the PDJ notice and a copy of such affidavit and application for an order showing successful completion of the period of probation. *See* C.R.C.P. 251.7(f). Upon receipt of this notice and absent objection from the People the PDJ will issue an order showing that the period of probation was successfully completed. *Id.* The order will become effective upon the expiration of the period of probation. *Id.*

6. If, during the period of probation, the People receive information that any condition may have been violated, the People may file a motion with the PDJ specifying the alleged violation and seeking an order that requires Respondent to show cause why the stay should not be lifted and the sanction activated for violation of the condition. *See* C.R.C.P. 251.7(e). The filing of such a motion will toll any period of suspension and probation until final ac-tion. *Id.* Any hearing will be held pursuant to C.R.C.P. 251.7(e). If Respondent's probation is revoked for any reason, he will be required to petition for reinstatement to the practice of law pursuant to C.R.C.P. 251.29(c).

7. The parties **MUST** file any post-hearing motion or application for stay pending appeal with the Hearing Board **on or before Thursday, November 5, 2015.** No extensions of time will be granted. If a party files a post-hearing motion or an application for stay pending appeal, any response thereto **MUST** be filed within seven days.

8. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs" **on or before Thursday, October 29, 2015.** Any response thereto **MUST** be filed within seven days.

